**Terrance CARSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–96–00768–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 1998.

Rehearing Overruled Sept. 28, 1998.

Stephanie L. Stevens, San Antonio, for Appellant.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice and SARAH B. DUNCAN, Justice.

## OPINION

SARAH B. DUNCAN, Justice.

The jury refused to find Terrance Carson acted in self-defense when he shot and killed Ruben Romero and, therefore, found Carson guilty of murder, sentencing him to fifty years in the Texas Department of Criminal Justice—Institutional Division. Carson appeals, contending the trial judge erred in refusing to permit him to question the venire regarding whether they would consider probation in a murder case. We agree. However, because there is no evidence this error affected the jury's finding of guilt and because no other reversible error was committed during the guilt-innocence phase of the trial, we affirm Carson's conviction and reverse only for a new punishment hearing.

### DISCRIMINATORY USE OF PEREMPTORY CHALLENGES

In his fourth through sixth points of error, Carson argues the trial court erred in overruling his objection to the State's exercising its peremptory challenges in a racially discriminatory manner in violation of the United States and Texas Constitutions and article 35.261 of the Texas Code of Criminal Procedure. We disagree.

### Scope and Standard of Review

In reviewing the trial court's ruling on an objection claiming a discriminatory exercise of a peremptory challenge, we "review voir dire, the State's race-neutral explanations, the composition of the jury panel, and appellant's rebuttal and impeachment evidence" under a clearly erroneous standard of review. *Rhoades v. State,* 934 S.W.2d 113, 123–24 (Tex.Crim.App.1996). Under the clearly erroneous standard, reversal is required only if "we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 123.

### Discussion

■ The State's exercise of peremptory challenges for reasons based on race is prohibited by the United States and Texas Constitutions, as well as article 35.261 of the Texas Code of Criminal Procedure. *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Esteves v. State,* 849 S.W.2d 822, 823 (Tex.Crim.App.1993); *Hill v. State,* 827 S.W.2d 860, 863 (Tex.Crim. App.) (*Batson* codified in and implemented by Tex.Code Crim. Proc. art. 35.261 (Vernon Supp.1998)), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). A criminal defendant may raise the jurors' equal protection claims, regardless of whether the defendant and the excluded juror are of the same race. *See Powers v. Ohio,* 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Adams v. State,* 862 S.W.2d 139, 144 (Tex.App.—San Antonio 1993, pet. ref'd).

■ A criminal defendant mounting a *Batson* challenge must first make a prima facie showing that the prosecutor has exercised peremptory challenges to remove members of the jury panel because of race. *Bat-*son, 476 U.S. at 96, 106 S.Ct. 1712. The burden then shifts to the prosecutor to provide a race-neutral explanation for the peremptory challenges. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The explanation need not be "persuasive, or even plausible. 'At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* at 768, 115 S.Ct. 1769 (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*[1]

■ The record in this case establishes the venire included three African–Americans. Of these, one was excused for cause, one was seated as a juror, and one was the subject of a peremptory strike by the State. The State exercised a peremptory strike against this venire person, the prosecutor testified, because "she's got seven kids. She's 32 years old. She's not married and she just barely got a job. And she's not what we would consider to be an ideal State's juror. That's why we struck her." No discriminatory intent is inherent in this explanation, and it is belied by the State's not exercising a second peremptory strike against the remaining African–American venire person. The trial court thus did not err in denying Carson's objection, and we overrule his fourth and sixth points of error.

### EXCLUSION OF *DEMPSEY* EVIDENCE

In his seventh and eighth points of error, Carson argues the trial court erred in excluding evidence of two previous assaults by Romero, which was offered to prove Romero,

---

1. Carson argues we should analyze his *Batson* challenge in light of the factors set forth in *Keeton v. State,* 749 S.W.2d 861, 866 (Tex.Crim.App. 1988). We decline to do so because the analysis employed in *Keeton* was supplanted by that mandated in *Purkett.*

Citing *In re McLean,* 725 S.W.2d 696 (Tex. 1987), Carson also argues we should read the Texas Equal Rights Amendment to provide greater protection than its federal counterpart. We decline this invitation as well. In *McLean,* the supreme court extended strict scrutiny analysis to gender-based discrimination; the court did not address race-based discrimination in general or in the peremptory challenge context.

not Carson, was the "first aggressor." We disagree.

### Standard of Review

A trial court's evidentiary rulings are reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, at 390–93 (Tex.Crim.App.1991) (on rehearing). A trial court does not abuse its discretion if its "ruling was at least within the zone of reasonable disagreement...." *Id.* at 391.

### Discussion

■ In *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (1954), the Texas Court of Criminal Appeals held evidence of specific violent acts by a deceased is admissible if:

"[E]vidence of some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried)" is admitted; and

1. "[i]f offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger," and it further "appear[s] that the acts of violence or misconduct were known to the defendant at the time of the homicide; or

2. "if offered for the purpose of showing that the deceased was in fact the aggressor ... the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide."

*Id.* at 877–78. After *Dempsey*, however, in 1986, the Texas Court of Criminal Appeals adopted the Texas Rules of Criminal Evidence. Rule 404(a) of these rules, like *Dempsey*, permits a defendant to introduce evidence that the victim of a crime was the first aggressor. TEX.R.CRIM. EVID. 404(a)(2). But Rule 405 limits the types of evidence that may be used:

(a) **Reputation or Opinion.** In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. .... In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

(b) **Specific Instances of Conduct.** In cases in which character or trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

TEX.R.CRIM. EVID. 405.[2] In short, unless the violent or aggressive nature of the victim is an essential element of the defendant's defense, a defendant may not inquire into specific instances of conduct on direct examination. *Tate v. State*, 956 S.W.2d 845, 848 (Tex.App.—Austin 1997, pet. granted); *accord Perrin v. Anderson*, 784 F.2d 1040, 1044–45 (10th Cir.1986) (interpreting the federal rules); *see generally* 1 Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 404.4 (Texas Practice 2d ed. 1993); Newell H. Blakely, *Article IV: Relevancy and Its Limits*, 20 HOUS.L.REV. 151, 195–99 (1983) (discussing civil rules 404 and 405).[3]

■ A homicide victim's violent or aggressive nature is not an essential element of self-defense. *See Purtell v. State*, 761 S.W.2d 360, 370 (Tex.Crim.App.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); TEX. PEN.CODE ANN. § 9.31 (Vernon 1994, Vernon Supp.1998), § 9.32 (Vernon Supp.1998). Accordingly,

---

**2.** We quote the Texas Rules of Criminal Evidence because Carson was tried before March 1, 1998, the effective date of the Texas Rules of Evidence, which merged the civil and criminal rules of evidence. However, Texas Rules of Evidence 404 and 405 do not differ in any material respect from their criminal predecessors.

**3.** In all respects relevant to this case, Rules 404 and 405 of the Texas Rules of Criminal Evidence were identical to their federal counterparts. *See*

and compare TEX.R.CRIM. EVID. 404–05 *with* FED. R.EVID. 404–05. Accordingly, federal case law is instructive in interpreting the Texas rules. *Englund v. State*, 946 S.W.2d 64, 68 n. 11 (Tex. Crim.App.1997). Presumably the same is true for the commentary on the similar civil rules by Professor Blakely, one of the principal drafters of the Texas Rules of Civil Evidence. *See* Dedication, *Texas Rules of Evidence Handbook*, 20 HOUS. L.REV. xi (1983).

while Carson was entitled to introduce evidence of Romero's violent or aggressive nature, TEX.R.CRIM. EVID. 404(a)(2), he was not entitled to introduce evidence of specific instances of this trait on direct examination. TEX.R.CRIM. EVID. 405(a)-(b). Rather, on direct examination, he was limited to reputation and opinion testimony. *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir.), *cert. denied*, 516 U.S. 1029, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995); *Perrin v. Anderson*, 784 F.2d at 1045. The trial court thus did not err in excluding evidence of specific acts of violence by Romero, and we overrule Carson's seventh and eighth points of error.

## CHARGE ERROR

In his ninth through fourteenth points of error, Carson argues the trial court erred in charging the jury on self defense. We disagree.

 Carson testified he saw Romero, with a knife, coming down the stairs of an apartment building in his direction at a point in time when Carson was carrying a handgun with approximately fourteen rounds in its clip, and neither at that point or later was anyone or anything blocking his retreat. Under these circumstances, a reasonable person would have retreated as a matter of law. *Martinez v. State*, 775 S.W.2d 645, 647 (Tex.Crim.App.1989). Therefore, Carson was not entitled to instructions on self defense or defense of a third party at all. TEX. PEN.CODE ANN. § 9.32(a)(2) (Vernon Supp. 1998), § 9.33(1) (Vernon 1994). Accordingly, any error in charging the jury on self defense was harmless beyond a reasonable doubt. *See Ex parte Green*, 548 S.W.2d 914, 917 (Tex.Crim.App.1977); TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). We therefore overrule Carson's ninth through fourteenth points of error. We turn now to the punishment phase of Carson's trial.

## PROBATION

In his first point of error, Carson argues the trial court erred in refusing to permit him to ask venire person Leticia Molina whether she would consider probation in a murder case in any circumstances other than euthanasia. We agree.

## Standard of Review

 "The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion." *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991). "The propriety of the question which the defendant sought to ask is determinative of the issue." *Id.* "[E]rror in the denial of a proper question which prevents the intelligent exercise of one's peremptory challenges constitutes an abuse of discretion...." *Id.* at 485.

## Error

 As the State recognizes, we have previously held the trial court abuses its discretion in refusing to permit counsel to question jurors regarding whether they could consider probation in a murder case in any circumstances other than euthanasia. *Flores v. State*, 920 S.W.2d 347, 354 (Tex.App.—San Antonio), *pet. dism'd, improvidently granted*, 940 S.W.2d 660 (Tex.Crim.App.1996). The State asks that we reconsider our decision in *Flores* in light of *Atkins v. State*, 951 S.W.2d 787 (Tex.Crim.App.1997). We grant the State's request but conclude *Atkins* is inapposite.

In *Atkins*, the Texas Court of Criminal Appeals held the trial court erred in overruling the defendant's objection to the State's use of a voir dire question based upon hypothetical facts that closely resembled those of the case on trial because the purpose of the hypothetical was not to explain the law but to commit the juror to a guilty verdict on the circumstances presented. *Id.* at 789. By analogy, the holding in *Atkins* would preclude defense counsel from asking a juror if he or she would grant probation on facts closely resembling those in this case. But that is not the question Carson's attorney tried to ask. Rather, defense counsel tried to ask Ms. Molina if euthanasia was "the only circumstances you would consider giving probation in a murder case?" This question could have been answered "yes" or "no" without regard to the specific facts involved

in this case. Accordingly, the issue is governed not by *Atkins* but by *Flores*.

### *Harm*

█ A defendant is harmed by "the erroneous prohibition of proper questioning of individual prospective jurors" if "(1) he exhausts all of his peremptory challenges, (2) he requests more challenges, (3) his request is denied, and (4) he identifies an objectionable person seated on the jury on whom he would have exercised a peremptory challenge." *Anson v. State*, 959 S.W.2d 203, 204 (Tex.Crim.App.1997), *petition for cert. filed* (U.S. Feb. 24, 1998) (No. 98–8998).

As the State concedes, Carson met the *Anson* test—he exhausted his peremptory challenges, he requested and was denied additional challenges, and he identified several objectionable jurors on whom he would have exercised a peremptory challenge. We therefore sustain Carson's first point of error and, in light of this action, deny as moot his second, third, fourteenth, and fifteenth points of error, all of which assert additional errors relating to the punishment phase.

### CONCLUSION—SCOPE OF REMAND

█ We have overruled Carson's points of error involving the guilt-innocence phase of his trial but sustained his point of error regarding the trial court's error in refusing to permit him to inquire whether a venire person could consider probation in a murder case in any circumstances other than euthanasia. Anticipating this disposition of Carson's points of error, the State argues we should affirm Carson's conviction and limit our remand to a new punishment hearing. We agree.

█ "[V]oir dire error regarding a subject that a jury would consider only during the punishment phase of a trial is 'error affecting punishment only,' unless the defendant produces evidence showing that the error necessarily produced a jury biased against the defendant on the issue of guilt." *Ransom v. State*, 920 S.W.2d 288, 298 (Tex. Crim.App.1994), *cert. denied*, —— U.S. ——, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996); *Post v. State*, 936 S.W.2d 343, 348–49 (Tex.App.—

Fort Worth 1996, pet. ref'd); TEX.CODE CRIM. PROC. art. 44.29(b) (Vernon Supp.1998).

Carson does not present either evidence or argument suggesting the trial court's erroneous restriction of his voir dire resulted in a jury biased against him on the issue of guilt. We therefore affirm his conviction, vacate only his sentence, and remand this cause for a new punishment hearing.