# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00343-CR

**Rebecca Walton, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 0983144, HONORABLE BOB PERKINS, JUDGE PRESIDING**

In a jury trial, appellant was convicted of murder.[1] *See* Tex. Pen. Code Ann. ' 19.02(b) (West 1994). The jury assessed punishment at sixty years= confinement in the Texas Department of Criminal Justice-Institutional Division. We will affirm the trial court=s judgment.

**Factual and Procedural Background**

Luis Flores accompanied appellant to a secluded field in northeastern Travis County, ostensibly to test-fire a gun. The next morning, June 5, 1998, Luis Flores=s body was found in the field. He

---

[1] This Court has already decided the appeal of Michael Highfill, Walton=s codefendant. *Highfill v. State*, No. 03-00-126-CR, 2001 Tex. App. LEXIS 3167 (Tex. App.CAustin 2001) (not designated for publication), *supplemental op. on mot. reh.*, 2001 Tex. App. LEXIS 5058 (Tex. App.CAustin 2001, pet. granted) (not designated for publication). Walton was granted an out-of-time appeal to this Court by the Court of Criminal Appeals.

had been shot twice at close range, in the back of the head and the back of the neck. The bullets used were .25 caliber; that size shell casings were found at the scene. Blood-soaked sections from that morning=s newspaper were also found at the scene. Flores=s car was later found abandoned in southern Williamson County. More .25 shell casings and bloodstained newspaper were in the car.

It is undisputed that appellant shot Flores. Appellant, a drug abuser and petty criminal, often bought crack cocaine and other drugs from Flores. Flores sometimes arranged for appellant to work as a prostitute to raise money. Appellant testified that Flores beat her severely Aa week or two@ before the shooting and stole money and drugs from her. Immediately thereafter, appellant purchased a .25 caliber pistol through a newspaper classified ad and told a friend, Catherine Goodwin, that she was going to kill Flores. Appellant pawned the pistol to a person known as AWild Man@ for $20 shortly after purchasing it.

Michael Highfill, appellant=s constant companion for a month or so prior to the shooting, was also a drug user who supported himself by shoplifting and forging checks, often helped by appellant and Flores. Highfill and appellant gave substantially the same account of the events of the evening. Highfill and appellant spent the evening of June 4 driving around Austin with Flores, shoplifting and using drugs. Appellant asked Flores if he would like to purchase a gun. Flores expressed an interest. Appellant had Flores drive to an encampment of homeless persons in northeastern Austin where AWild Man@ could usually be found. Appellant redeemed the pistol from AWild Man,@ apparently with money supplied by Flores, and showed it to Flores. Appellant suggested that she, Highfill, and Flores drive to a rural location where Flores could fire the weapon. As they drove there, appellant told Flores how she had purchased the pistol. She

told Flores to stop at a convenience store, where she would purchase a newspaper and show him the gun ads.

They stopped at a gas station to get a paper. Appellant asked Highfill to accompany her to the bathroom. Highfill complied because he thought Ashe had some dope and we were going to smoke it.@ Highfill then said that appellant looked at him, smiled, and said, A[A]re you ready to see a Mexican die?@[2] She then said that Flores Af[] [her] over@ and nobody did that to her. She said she was also going to get his dope and money.

Highfill then left the bathroom, got the paper, and went to the car. Appellant then emerged from the bathroom and told Flores to drive to Athat country road where nobody is at.@ They drove there and parked where no one could see them. Appellant then put her hand outside the door and fired a round or two out the window towards the field. Flores then wanted to shoot the gun. Appellant got out of the car and fired the gun again towards the field. Highfill thought Flores said something, but was not sure. Highfill heard Aher spin in the gravel, real quick.@ He saw a flash and looked at Flores and said it looked as if Flores was trying to get out of the car. Highfill saw the flash go off again. He looked at the car and saw Flores=s head back against the backrest and heard him moan. Flores looked Alike he passed out or something.@

---

[2] Appellant said she said Amotherf[]@ not AMexican.@

Highfill helped appellant remove Flores=s body from his car. Appellant went through Flores=s pockets, taking cash, credit cards, identification, and other items. Portions of the newspaper were used to soak up blood in the car. Appellant and Highfill then drove Flores=s car to the house of a friend, Jennifer Williams, in Round Rock, and then to Goodwin=s apartment in Austin. At both locations, appellant and Highfill recounted what had happened and went through the items taken from Flores=s body. They returned to Williams=s house, and Williams helped them dispose of Flores=s car. Williams later contacted the police and provided them with the information that led to the arrests of appellant and Highfill at Goodwin=s apartment on June 6.

Appellant testified that she had been very angry at Flores and had planned to scare him, but she denied having any prior intent to kill or rob him. Appellant said that the reason she got out of the car was that Flores was reaching for the gun; his Agrabbing@ for the gun made her afraid. She did not claim that Flores threatened her. She admitted laughing while she shot Flores.

Appellant brings three points of error on appeal, contending that the trial court erred in refusing: (1) to instruct the jury on self-defense; (2) to admit the testimony of appellant and her sisters pertaining to appellant=s background as it was relevant to her state of mind at the time of the offense; and, (3) to instruct the jury on Asudden passion@ at the punishment phase. Appellant does not challenge the sufficiency of the evidence to support the conviction.

**Discussion**

*Self-Defense*

4

In her first point of error, appellant contends that the trial court erred in refusing to give the jury her requested instruction on self-defense. A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of the trial court=s opinion of the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). If the evidence, however, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel*, 55 S.W.3d at 591; *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

A defendant is entitled to an instruction on the use of deadly force in self-defense only if he presents some evidence on each of the statutory conditions. *Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); *Halbert v. State*, 881 S.W.2d 121, 124 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d). Thus, the defendant must produce some evidence that she would have been justified in using force,[3] that a reasonable person in her position would not have retreated, and that the use of deadly force was reasonably believed to be immediately necessary to protect her against the other=s use or attempted use of unlawful deadly force. *Henderson v. State*, 906 S.W.2d 589, 594-95 (Tex. App.CEl Paso 1995, pet. ref=d).

---

[3] To be justified in using deadly force, one must be justified in using force under Penal Code section 9.31. Tex. Pen. Code Ann. ' 9.32(a)(1) (West Supp. 2002).

In this case, evidence is lacking on all three elements. At the time appellant shot Flores, there is no evidence that appellant had a reasonable belief that the use of force was immediately necessary to protect herself against the unlawful use, or attempted use, of force by Flores. Although appellant characterized Flores=s reaching for the gun as Agrabbing@ at the gun, by her own account this reaching occurred after they had driven to a secluded area and she had told Flores that she had the type of gun he might be interested in buying. Further, when Flores Agrabbed@ for the gun, appellant got out of the car, and Flores did not continue to try to seize the gun. Flores did not have a knife or gun, was not reaching for anything, and was sitting back in the driver=s seat while appellant was outside the car when she. He was not even making verbal threats at the time. While appellant argues that she perceived apparent danger, which does not necessarily require an actual attack, the only possible Aapparent danger@ had ended before the shooting. *See Oestrick v. State*, 939 S.W.2d 232, 238 (Tex. App.CAustin 1997, pet. ref=d) (defendant not entitled to self-defense instruction when victim had baseball bat in hand but was walking away from defendant at time defendant shot victim). A claim of apparent danger does not relieve a defendant of the need to show the belief was reasonable. There is no evidence that appellant had any reasonable belief that force was immediately necessary to protect herself against the unlawful use of force by Flores.

For the same reasons as set out above, this record does not show that appellant had a reasonable belief that deadly force was immediately necessary to protect herself against the unlawful use of deadly force by Flores.

Finally, there is no evidence that a reasonable person in appellant=s position would not have retreated. When circumstances are such that a reasonable person would have retreated, and there is no

**6**

evidence that the defendant attempted to retreat, the evidence does not raise self defense. *Osby v. State*,

939 S.W.2d 787, 792 (Tex. App.CFort Worth 1997, pet. ref=d). For example, in *Carson v. State*, 986

S.W.2d 24, 28 (Tex. App.CSan Antonio 1998), *rev=d on other grounds*, 6 S.W.3d 536 (Tex. Crim.

App. 1999), there was evidence that the defendant saw the victim coming down the stairs of an apartment

in his direction with a knife. The defendant, who was carrying a loaded handgun, was not entitled to a

charge on self-defense when there was nothing blocking his retreat. *See also Oestrick*, 939 S.W.2d at 238

(additional reason for lack of entitlement to self-defense instruction was that no evidence that a reasonable

person would not have retreated). Flores was inside the car, and not attempting to get out, even by

appellant=s account. Appellant was outside the car, in possession and control of a weapon that she had

already demonstrated that she knew how to shoot.

We hold that appellant was not entitled to an instruction on self-defense. We overrule point

of error one.

### *Instruction on Sudden Passion*

In her third point of error, appellant claims that the trial court erred in failing to give her

requested charge on Asudden passion.@ During the punishment phase, the defendant may raise the issue

> whether he caused the death under the immediate influence of sudden passion arising from
> an adequate case. If the defendant proves the issue in the affirmative by a preponderance
> of the evidence, the offense is a felony of the second degree.

Tex. Pen. Code Ann. ' 19.02(d) (West 1994). ASudden passion@ means passion directly caused by and

arising out of provocation by the individual killed which passion arose at the time of the offense and was not

solely the result of former provocation. *Id.* ' (a)(2). AAdequate cause@ means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id*. at (a)(1). In considering whether any evidence is raised on this issue, the reviewing court considers the record from both the guilt-innocence and punishment phase of the trial. *Williams v. State*, 35 S.W.3d 783, 787 (Tex. App.CBeaumont 2001, pet. ref=d ).

Appellant failed to show entitlement to an instruction on Asudden passion.@ The evidence showed that appellant was angry with Flores about a prior incident in which he assaulted and robbed her. However, her actions showed that her anger at Flores did not render her Aincapable of cool reflection.@ She announced her intention to kill him a week before she did. She carefully planned a way to have Flores accompany her to a secluded location and to prevent him from becoming alarmed by her possession of a gun. At the time of the shooting, she was not reacting to any immediate provocation by Flores. She was the one outside the car with the gun. He was sitting in the car, not pursuing her, when she shot him. While his previous assault on her is the kind of act that would commonly produce immediate rage and terror in a person such that it might render a person=s mind incapable of cool reflection, appellant=s delayed actions were the epitome of Acool reflection.@ An actor who fears for his life may nevertheless coolly and deliberately dispatch his assailant. *Fry v. State*, 915 S.W.2d 554, 559 (Tex. App.CHouston [14th Dist.] 1995, no pet.). There was no evidence in this case to raise the issue of Asudden passion.@ We overrule the third point of error.

*Testimony About Abuse and Neglect*

8

In her second point of error, appellant contends that the trial court erred in failing to admit testimony from appellant and her sisters about the abuse and neglect suffered by appellant, her sisters, and their mother during appellant=s childhood. Appellant and her sisters testified outside the presence of the jury about these events. The State objected that the testimony was irrelevant, which objection the trial court sustained.

Appellant argues that the exclusion of the evidence violated the fundamental constitutional right that a criminal defendant have a meaningful opportunity to present a complete defense. *Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993); *California v. Trombetta*, 467 U.S. 479, 485 (1984). An accused has not only the right to confront the prosecution=s witnesses, but also the right to present his own witnesses to establish a defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967). Appellant correctly states that the exclusion of a defendant=s evidence can amount to a violation of the right to compel the attendance of witnesses in the defendant=s favor. *Potier v. State,* 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). However, not every exclusion of a defendant=s evidence, even if erroneous, amounts to a constitutional violation or constitute reversible error.

A defendant does not have an unlimited right to present relevant evidence; even the presentation of relevant evidence is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 316 (1973). That a state or federal rule excludes evidence favorable to a defendant does not necessarily deny defendant a fair opportunity to defend himself. *Id*. The exclusion must be egregious to violate due process. *Potier*, 68 S.W.3d at 660. The exclusion of a defendant=s evidence is constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the

**9**

defendant from presenting a defense. *Id*. at 665-66 (exclusion of evidence that Awhole neighborhood@ told appellant that victim was Alooking for him@ not constitutional error when appellant allowed to present evidence concerning previous attacks by victim; exclusion did not vitiate his defense of self-defense); *see also Smith v. State*, 874 S.W.2d 269, 274 (Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (exclusion of evidence concerning neighbor=s observation of children=s condition in April 1984 not relevant to whether Aimminent harm@ existed in September 1984 to evaluate father=s necessity defense to kidnapping charge).

Appellant sought to introduce the testimony of her two sisters who would have testified that they and appellant witnessed different men assault their mother and that appellant had been physically assaulted by several men, including her brothers. Testimony by appellant about an assault by her stepfather and by another man was also excluded.

Appellant argues that the excluded evidence was necessary to appellant=s self-defense theory because it was relevant to her perception of the necessity for the use of force. The abuse in appellant=s past might indeed help the jury understand her rage in a general sense; however, the self-defense analysis focuses on the immediate events surrounding the use of deadly force and the reasonableness of appellant=s actions. None of the proffered evidence concerned recent conduct; it was remote in time. Further, none of the excluded evidence concerned Flores=s conduct toward appellant or any others. Appellant had a full opportunity to present evidence about Flores=s assault on her and theft of some of her possessions. This evidence concerning the assault came not only from appellant, but also from other witnesses.

AError may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.@ Tex. R. Evid. 103(a).  If there were any error in excluding the testimony concerning past abuse by persons other than Flores, it did not affect appellant=s substantial rights as that exclusion did not vitiate appellant=s ability to present her claim of self-defense based on Flores=s behavior.  We overrule appellant=s second point of error.

### Conclusion

We conclude that appellant was not entitled to jury instructions on sudden passion and self defense, nor did the trial court err in its exclusion of evidence.  Having overruled appellant=s points of error, we affirm the judgment.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   August 30, 2002

Do Not Publish

11