TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00343-CR








Rebecca Walton, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0983144, HONORABLE BOB PERKINS, JUDGE PRESIDING 







 In a jury trial, appellant was convicted of murder. (1) See Tex. Pen. Code Ann.
§ 19.02(b) (West 1994). The jury assessed punishment at sixty years' confinement in the Texas
Department of Criminal Justice-Institutional Division. We will affirm the trial court's judgment. 


Factual and Procedural Background



 Luis Flores accompanied appellant to a secluded field in northeastern Travis County,
ostensibly to test-fire a gun. The next morning, June 5, 1998, Luis Flores's body was found in the
field. He had been shot twice at close range, in the back of the head and the back of the neck. The 
bullets used were .25 caliber; that size shell casings were found at the scene. Blood-soaked sections
from that morning's newspaper were also found at the scene. Flores's car was later found abandoned
in southern Williamson County. More .25 shell casings and bloodstained newspaper were in the car. 

 It is undisputed that appellant shot Flores. Appellant, a drug abuser and petty
criminal, often bought crack cocaine and other drugs from Flores. Flores sometimes arranged for
appellant to work as a prostitute to raise money. Appellant testified that Flores beat her severely "a
week or two" before the shooting and stole money and drugs from her. Immediately thereafter,
appellant purchased a .25 caliber pistol through a newspaper classified ad and told a friend,
Catherine Goodwin, that she was going to kill Flores. Appellant pawned the pistol to a person
known as "Wild Man" for $20 shortly after purchasing it. 

 Michael Highfill, appellant's constant companion for a month or so prior to the
shooting, was also a drug user who supported himself by shoplifting and forging checks, often helped
by appellant and Flores. Highfill and appellant gave substantially the same account of the events of
the evening. Highfill and appellant spent the evening of June 4 driving around Austin with Flores,
shoplifting and using drugs. Appellant asked Flores if he would like to purchase a gun. Flores
expressed an interest. Appellant had Flores drive to an encampment of homeless persons in
northeastern Austin where "Wild Man" could usually be found. Appellant redeemed the pistol from
"Wild Man," apparently with money supplied by Flores, and showed it to Flores. Appellant
suggested that she, Highfill, and Flores drive to a rural location where Flores could fire the weapon.
As they drove there, appellant told Flores how she had purchased the pistol. She told Flores to stop
at a convenience store, where she would purchase a newspaper and show him the gun ads.

 They stopped at a gas station to get a paper. Appellant asked Highfill to accompany
her to the bathroom. Highfill complied because he thought "she had some dope and we were going
to smoke it." Highfill then said that appellant looked at him, smiled, and said, "[A]re you ready to
see a Mexican die?" (2) She then said that Flores "f[] [her] over" and nobody did that to her. She said
she was also going to get his dope and money. 

 Highfill then left the bathroom, got the paper, and went to the car. Appellant then
emerged from the bathroom and told Flores to drive to "that country road where nobody is at." They
drove there and parked where no one could see them. Appellant then put her hand outside the door
and fired a round or two out the window towards the field. Flores then wanted to shoot the gun.
Appellant got out of the car and fired the gun again towards the field. Highfill thought Flores said
something, but was not sure. Highfill heard "her spin in the gravel, real quick." He saw a flash and
looked at Flores and said it looked as if Flores was trying to get out of the car. Highfill saw the flash
go off again. He looked at the car and saw Flores's head back against the backrest and heard him
moan. Flores looked "like he passed out or something."

 Highfill helped appellant remove Flores's body from his car. Appellant went through
Flores's pockets, taking cash, credit cards, identification, and other items. Portions of the newspaper
were used to soak up blood in the car. Appellant and Highfill then drove Flores's car to the house
of a friend, Jennifer Williams, in Round Rock, and then to Goodwin's apartment in Austin. At both
locations, appellant and Highfill recounted what had happened and went through the items taken
from Flores's body. They returned to Williams's house, and Williams helped them dispose of
Flores's car. Williams later contacted the police and provided them with the information that led
to the arrests of appellant and Highfill at Goodwin's apartment on June 6.

 Appellant testified that she had been very angry at Flores and had planned to scare
him, but she denied having any prior intent to kill or rob him. Appellant said that the reason she got
out of the car was that Flores was reaching for the gun; his "grabbing" for the gun made her afraid. 
She did not claim that Flores threatened her. She admitted laughing while she shot Flores.

 Appellant brings three points of error on appeal, contending that the trial court erred
in refusing: (1) to instruct the jury on self-defense; (2) to admit the testimony of appellant and her
sisters pertaining to appellant's background as it was relevant to her state of mind at the time of the
offense; and, (3) to instruct the jury on "sudden passion" at the punishment phase. Appellant does
not challenge the sufficiency of the evidence to support the conviction.


Discussion



Self-Defense


 In her first point of error, appellant contends that the trial court erred in refusing to
give the jury her requested instruction on self-defense. A defendant is entitled to an instruction on
self-defense if the issue is raised by the evidence, whether that evidence is strong or weak,
unimpeached or contradicted, and regardless of the trial court's opinion of the credibility of the
defense. Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); Hamel v. State, 916 S.W.2d
491, 493 (Tex. Crim. App. 1996). If the evidence, however, viewed in the light most favorable to
the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the
issue. Ferrel, 55 S.W.3d at 591; Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

 A defendant is entitled to an instruction on the use of deadly force in self-defense only
if he presents some evidence on each of the statutory conditions. Werner v. State, 711 S.W.2d 639,
644 (Tex. Crim. App. 1986); Halbert v. State, 881 S.W.2d 121, 124 (Tex. App.--Houston [1st Dist.]
1994, pet. ref'd). Thus, the defendant must produce some evidence that she would have been
justified in using force, (3) that a reasonable person in her position would not have retreated, and that
the use of deadly force was reasonably believed to be immediately necessary to protect her against
the other's use or attempted use of unlawful deadly force. Henderson v. State, 906 S.W.2d 589, 594-95 (Tex. App.--El Paso 1995, pet. ref'd).

 In this case, evidence is lacking on all three elements. At the time appellant shot
Flores, there is no evidence that appellant had a reasonable belief that the use of force was
immediately necessary to protect herself against the unlawful use, or attempted use, of force by
Flores. Although appellant characterized Flores's reaching for the gun as "grabbing" at the gun, by
her own account this reaching occurred after they had driven to a secluded area and she had told
Flores that she had the type of gun he might be interested in buying. Further, when Flores "grabbed"
for the gun, appellant got out of the car, and Flores did not continue to try to seize the gun. Flores
did not have a knife or gun, was not reaching for anything, and was sitting back in the driver's seat
while appellant was outside the car when she shot him. He was not even making verbal threats at
the time. While appellant argues that she perceived apparent danger, which does not necessarily
require an actual attack, the only possible "apparent danger" had ended before the shooting. See
Oestrick v. State, 939 S.W.2d 232, 238 (Tex. App.--Austin 1997, pet. ref'd) (defendant not entitled
to self-defense instruction when victim had baseball bat in hand but was walking away from
defendant at time defendant shot victim). A claim of apparent danger does not relieve a defendant
of the need to show the belief was reasonable. There is no evidence that appellant had any
reasonable belief that force was immediately necessary to protect herself against the unlawful use
of force by Flores. 

 For the same reasons as set out above, this record does not show that appellant had
a reasonable belief that deadly force was immediately necessary to protect herself against the
unlawful use of deadly force by Flores. 

 Finally, there is no evidence that a reasonable person in appellant's position would
not have retreated. When circumstances are such that a reasonable person would have retreated, and
there is no evidence that the defendant attempted to retreat, the evidence does not raise self defense. 
Osby v. State, 939 S.W.2d 787, 792 (Tex. App.--Fort Worth 1997, pet. ref'd). For example, in
Carson v. State, 986 S.W.2d 24, 28 (Tex. App.--San Antonio 1998), rev'd on other grounds, 6
S.W.3d 536 (Tex. Crim. App. 1999), there was evidence that the defendant saw the victim coming
down the stairs of an apartment in his direction with a knife. The defendant, who was carrying a
loaded handgun, was not entitled to a charge on self-defense when there was nothing blocking his
retreat. See also Oestrick, 939 S.W.2d at 238 (additional reason for lack of entitlement to self-defense instruction was that no evidence that a reasonable person would not have retreated). Flores
was inside the car, and not attempting to get out, even by appellant's account. Appellant was outside
the car, in possession and control of a weapon that she had already demonstrated that she knew how
to shoot.

 We hold that appellant was not entitled to an instruction on self-defense. We overrule
point of error one.


Instruction on Sudden Passion


 In her third point of error, appellant claims that the trial court erred in failing to give
her requested charge on "sudden passion." During the punishment phase, the defendant may raise
the issue


whether he caused the death under the immediate influence of sudden passion arising
from an adequate case. If the defendant proves the issue in the affirmative by a
preponderance of the evidence, the offense is a felony of the second degree.



Tex. Pen. Code Ann. § 19.02(d) (West 1994). "Sudden passion" means passion directly caused by
and arising out of provocation by the individual killed which passion arose at the time of the offense
and was not solely the result of former provocation. Id. § (a)(2). "Adequate cause" means cause that
would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary
temper, sufficient to render the mind incapable of cool reflection. Id. at (a)(1). In considering
whether any evidence is raised on this issue, the reviewing court considers the record from both the
guilt-innocence and punishment phase of the trial. Williams v. State, 35 S.W.3d 783, 787 (Tex.
App.--Beaumont 2001, pet. ref'd ).

 Appellant failed to show entitlement to an instruction on "sudden passion." The
evidence showed that appellant was angry with Flores about a prior incident in which he assaulted
and robbed her. However, her actions showed that her anger at Flores did not render her "incapable
of cool reflection." She announced her intention to kill him a week before she did. She carefully
planned a way to have Flores accompany her to a secluded location and to prevent him from
becoming alarmed by her possession of a gun. At the time of the shooting, she was not reacting to
any immediate provocation by Flores. She was the one outside the car with the gun. He was sitting
in the car, not pursuing her, when she shot him. While his previous assault on her is the kind of act
that would commonly produce immediate rage and terror in a person such that it might render a
person's mind incapable of cool reflection, appellant's delayed actions were the epitome of "cool
reflection." An actor who fears for his life may nevertheless coolly and deliberately dispatch his
assailant. Fry v. State, 915 S.W.2d 554, 559 (Tex. App.--Houston [14th Dist.] 1995, no pet.). 
There was no evidence in this case to raise the issue of "sudden passion." We overrule the third
point of error.


Testimony About Abuse and Neglect


 In her second point of error, appellant contends that the trial court erred in failing to
admit testimony from appellant and her sisters about the abuse and neglect suffered by appellant, her
sisters, and their mother during appellant's childhood. Appellant and her sisters testified outside the
presence of the jury about these events. The State objected that the testimony was irrelevant, which
objection the trial court sustained.

 Appellant argues that the exclusion of the evidence violated the fundamental
constitutional right that a criminal defendant have a meaningful opportunity to present a complete
defense. Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993); California v. Trombetta, 467 U.S. 479,
485 (1984). An accused has not only the right to confront the prosecution's witnesses, but also the
right to present his own witnesses to establish a defense. Washington v. Texas, 388 U.S. 14, 19
(1967). Appellant correctly states that the exclusion of a defendant's evidence can amount to a
violation of the right to compel the attendance of witnesses in the defendant's favor. Potier v. State,
68 S.W.3d 657, 659 (Tex. Crim. App. 2002). However, not every exclusion of a defendant's
evidence, even if erroneous, amounts to a constitutional violation or constitute reversible error.

 A defendant does not have an unlimited right to present relevant evidence; even the
presentation of relevant evidence is subject to reasonable restrictions. See United States v. Scheffer,
523 U.S. 303, 316 (1973). That a state or federal rule excludes evidence favorable to a defendant
does not necessarily deny defendant a fair opportunity to defend himself. Id. The exclusion must
be egregious to violate due process. Potier, 68 S.W.3d at 660. The exclusion of a defendant's
evidence is constitutional error only if the evidence forms such a vital portion of the case that
exclusion effectively precludes the defendant from presenting a defense. Id. at 665-66 (exclusion
of evidence that "whole neighborhood" told appellant that victim was "looking for him" not
constitutional error when appellant allowed to present evidence concerning previous attacks by
victim; exclusion did not vitiate his defense of self-defense); see also Smith v. State, 874 S.W.2d
269, 274 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd) (exclusion of evidence concerning
neighbor's observation of children's condition in April 1984 not relevant to whether "imminent
harm" existed in September 1984 to evaluate father's necessity defense to kidnapping charge).

 Appellant sought to introduce the testimony of her two sisters who would have
testified that they and appellant witnessed different men assault their mother and that appellant had
been physically assaulted by several men, including her brothers. Testimony by appellant about an
assault by her stepfather and by another man was also excluded.

 Appellant argues that the excluded evidence was necessary to appellant's self-defense
theory because it was relevant to her perception of the necessity for the use of force. The abuse in
appellant's past might indeed help the jury understand her rage in a general sense; however, the self-defense analysis focuses on the immediate events surrounding the use of deadly force and the
reasonableness of appellant's actions. None of the proffered evidence concerned recent conduct; it
was remote in time. Further, none of the excluded evidence concerned Flores's conduct toward
appellant or any others. Appellant had a full opportunity to present evidence about Flores's assault
on her and theft of some of her possessions. This evidence concerning the assault came not only
from appellant, but also from other witnesses. 

 "Error may not be predicated upon a ruling which admits or excludes evidence unless
a substantial right of the party is affected." Tex. R. Evid. 103(a). If there were any error in
excluding the testimony concerning past abuse by persons other than Flores, it did not affect
appellant's substantial rights as that exclusion did not vitiate appellant's ability to present her claim
of self-defense based on Flores's behavior. We overrule appellant's second point of error.


Conclusion



 We conclude that appellant was not entitled to jury instructions on sudden passion
and self defense, nor did the trial court err in its exclusion of evidence. Having overruled appellant's
points of error, we affirm the judgment.



 __________________________________________

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: August 30, 2002

Do Not Publish
1. This Court has already decided the appeal of Michael Highfill, Walton's codefendant. Highfill
v. State, No. 03-00-126-CR, 2001 Tex. App. LEXIS 3167 (Tex. App.--Austin 2001) (not designated
for publication), supplemental op. on mot. reh., 2001 Tex. App. LEXIS 5058 (Tex. App.--Austin
2001, pet. granted) (not designated for publication). Walton was granted an out-of-time appeal to
this Court by the Court of Criminal Appeals.
2. Appellant said she said "motherf[]" not "Mexican."
3. To be justified in using deadly force, one must be justified in using force under Penal Code
section 9.31. Tex. Pen. Code Ann. § 9.32(a)(1) (West Supp. 2002).