In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00089-CR
______________________________


KEVIN GOODWIN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 01-F-466-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Factual and Procedural Background
            Kevin Goodwin appeals his conviction for the murder of his nephew, Scott Ford. Goodwin
alleged that the shooting was accidental and that he did not intend to kill Ford. The jury found
Goodwin guilty of murder and assessed punishment at ninety-nine years' imprisonment. We affirm
the judgment of the trial court.
            At approximately 9:30 a.m. on September 3, 2001, Goodwin and Ford became involved in
an argument on the front porch of Goodwin's home. Ford died of a single gunshot wound that went
through his left hand and entered his chest. At the time of his death, Ford was staying with Goodwin
at Goodwin's residence in Bowie County, Texas. In his statement to the police, Goodwin claimed
the gun unintentionally discharged as Ford lunged at him and the barrel hit Ford's chest. However,
forensic evidence indicated that Ford was at least one foot away from the end of the barrel and
possibly as much as six feet. The evidence supports the theory that the trajectory of the shot required
Ford to be standing on the step of the porch. 
            The following is a summary of our disposition of Goodwin's six issues:
            A)       Did the trial judge make an improper comment on the evidence? We conclude the
statement was not a comment on the evidence. 
            B)        Did the trial court err in excluding extraneous evidence concerning the victim's prior
acts of violence and his alleged homosexuality? Goodwin failed to preserve the alleged error
concerning the exclusion of this evidence for our review. 
            C)        Did the State make an improper closing argument? We conclude the State's argument
was a reasonable deduction from the evidence. 
            D)       Did Goodwin receive ineffective assistance of counsel? Goodwin has failed to show
that his counsel's actions resulted in deficient performance. 
            E)        Was the evidence factually sufficient?; and
            F)        Was the evidence legally sufficient? We hold that the evidence was factually and
legally sufficient to support the verdict. 
            A.        No Improper Comment on the Evidence
            Goodwin's first argument is that the trial judge impermissibly commented on the evidence. 
Goodwin argues, because the alleged impermissible comment was made in the presence of the jury,
it constitutes fundamental error. We do not find the judge's statement to constitute a comment on
the evidence.
            On direct examination by the State, Dr. Ann E. Lopez was being questioned on the trajectory
of the shot which killed Ford. Dr. Lopez testified that "the charge traveled . . . pretty much straight
forward, nearly horizontal." The State responded: "So by horizontal, we're talking 'horizontal'
(indicating)?" During the following questioning, the trial judge commented that "[h]orizontal is
horizontal." 
            The trial judge shall maintain an attitude of impartiality throughout the proceedings in front
of the jury. Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000). 
            A trial court improperly comments on the weight of the evidence if it makes "a statement that
implies approval of the State's argument, that indicates any disbelief in the defense's position, or that
diminishes the credibility of the defense's approach to its case." Hoang v. State, 997 S.W.2d 678,
681 (Tex. App.—Texarkana 1999, no pet.) (citations omitted). The inquiry also requires
consideration of "whether the remarks by the trial court were made in the presence of the jury and
whether the trial judge's comments, however impartially they may have been made, may have led
the jury to infer the judge's own opinion of the merits of the case." Id. (citations omitted). 
            The statement of the trial court does not indicate that the trajectory of the shot was horizontal,
but rather is similar to a definition of horizontal. Such a comment is more akin to judicial notice of
a universally recognized fact rather than a comment on the evidence. The comment did not indicate
any disbelief in the defense's position or diminish the capacity of the defense's approach to the case. 
Since the statement is not a comment on the evidence, we decline to determine whether such error
would be fundamental error.


 We overrule Goodwin's first issue.
            B.        Exclusion of Extrinsic Evidence Was Not Preserved
            Goodwin's second argument is that the trial court erred by excluding evidence concerning
Ford's lifestyle and his propensity toward violence. However, the error was not preserved for our
review. 
            During the cross-examination of Carolyn Ford, Ford's mother, Goodwin's attorney asked her
about an alleged homosexual relationship of Ford's. The State objected to the question and the trial
court sustained the objection. The record indicates that the exchange occurred as follows:
Q[DEFENSE COUNSEL:] Where did your son go to grade school?
 
A[CAROLYN FORD:] He went to grade school in Malta.
 
QDo you remember the name John Joe Allen?
 
AYes, I do.
 
QOkay, do you remember his lifestyle and your son's lifestyle together?
 
AYes.
 
[PROSECUTOR]: Well, Judge, excuse me. This is clearly under
608. This is clearly improper. We have had this discussion.
 
THE COURT: Sustained.
 
[PROSECUTOR]: Ms. Allen knows this.
 
THE COURT: Sustained.
 
Q[DEFENSE COUNSEL:] Your Honor, we're not talking about
anything other than his lifestyle and what he did with his time, and I'm asking about
the problems that he had.
 
THE COURT: Let's have the next question.
Goodwin's trial counsel did not make an offer of proof concerning what Carolyn Ford's testimony
would have been.
            Error was not preserved for review. To preserve the record for appeal, the party offering the
excluded evidence may make an offer of proof in the form of a concise statement, or in question and
answer form. Tex. R. Evid. 103(b). If the party requests permission to make a bill of exceptions,
the trial court is required to direct the making of the offer of proof in question and answer form. Id.;
Kipp v. State, 876 S.W.2d 330, 334 (Tex. Crim. App. 1994); Callahan v. State, 937 S.W.2d 553, 557
(Tex. App.—Texarkana 1996, no pet.); Flores v. State, 920 S.W.2d 347, 352 (Tex. App.—San
Antonio 1996, no pet.). In this case, the record is devoid of any reference to what, if anything, the
witness would have testified. In the absence of such information, any claim of error is not preserved
for appellate review. Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); Greenwood v. State,
948 S.W.2d 542, 549 (Tex. App.—Fort Worth 1997, no pet.); see Tex. R. Evid. 103(a)(2) ("Error
may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the
party is affected, and . . . the substance of the evidence was made known to the court by offer, or was
apparent from the context within which questions were asked."). 
            C.        The State's Argument was a Reasonable Deduction from the Evidence
            In his third point of error, Goodwin contends that the trial court erred by allowing the State
to argue outside the evidence during closing argument. We find the argument was a reasonable
deduction from the evidence.
            During closing argument, the State suggested that the argument on the front porch concerned
methamphetamine. Specifically, the prosecutor argued the following:
[PROSECUTOR]: That argument out on that porch, ladies and gentlemen,
was about some methamphetamine. It was about somebody's methamphetamine.
 
[DEFENSE COUNSEL]: Your Honor, I'm going to object. There has been
no testimony as to any argument over methamphetamine.
 
THE COURT: Overruled. This is closing argument and can be argued with
the record and what can be deduced therefrom. All right, Mr. Smith, continue.
 
[PROSECUTOR]: It was about an argument over somebody taking
somebody's methamphetamine, somebody's drugs. Now Scott Ford had come
Wednesday, before the Monday when he was murdered by Kevin Goodwin. He
hadn't been working, didn't have any money, had been living in his mom's house. He
stays at Kevin Goodwin's house and the last thing that Kevin Goodwin says to
Carolyn Ford is, "Don't worry, I'll give him some drugs for help."
 
Kelsey told you folks no problem that night, no problem the next night, no
problem the next night, no problem the next night. He's there every night. Sunday,
we know that the defendant had in his possession methamphetamine. We know
Monday morning when Scott Ford is killed, he has methamphetamine in his system. 
Whose was it? Where did it come from? That was the argument. That's what the
argument was about.
Goodwin contends that, although there was some evidence at trial that he and Ford were arguing,
there was no evidence the argument concerned methamphetamine. According to Goodwin, this
argument was outside the evidence and the objection should have been sustained.
            Permissible jury arguments fall within one or more of the following four general areas: 
(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument
of opposing counsel; and (4) plea for law enforcement. Lagrone v. State, 942 S.W.2d 602, 619 (Tex.
Crim. App. 1997); see Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Wilson v. State,
7 S.W.3d 136, 147 (Tex. Crim. App. 1999); Alejandro v. State, 493 S.W.2d 230, 231–32 (Tex. Crim.
App. 1973). The trial court abuses its discretion if it permits argument outside these four areas. See
Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995) (en banc).
            The argument was a reasonable deduction from the evidence introduced in this case. Bret
Goodwin, Goodwin's nephew, testified that Goodwin had methamphetamine in his possession the
day before the shooting. Carolyn Ford testified that Goodwin told her that he would give Ford some
drugs for helping clean up the house. The autopsy detected methamphetamine and metabolites of
marihuana in Ford's blood. Ford and Goodwin had argued the previous night. Carol Ann Goodwin
and Danielle Goodwin, Goodwin's nieces, testified that Goodwin asked Danielle to search the room
in which Ford had been staying for any drugs he may have had before the police had arrived. From
this evidence, the conclusion that the argument was about a dispute over drugs is a reasonable
deduction from the evidence.
            D.        No Showing of Ineffective Assistance of Counsel
            Goodwin's fourth point of error alleges that he received ineffective assistance of counsel. 
The alleged ineffectiveness focuses on two main alleged deficiencies: (1) failing to object to the
photographs of the victim and the crime scene, and (2) failing to ask for jury instructions on lesser-included offenses, necessity, self-defense, and sudden passion arising from adequate cause. 
Goodwin also asserts that, if error was not preserved regarding Ford's lifestyle and propensity to
violence, it was ineffective assistance of counsel not to make an offer of proof. None of Goodwin's
arguments, though, overcome the presumption that his trial counsel's actions were reasonable.
            Both the United States and the Texas Constitutions confer a right to effective representation
by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's performance is ineffective,
the conviction cannot stand. The Texas Court of Criminal Appeals has held that the Texas
Constitution does not impose a higher standard than the Sixth Amendment. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim.
App. 1986). The Sixth Amendment standard, established by Strickland, requires a defendant
alleging ineffective assistance of counsel to show that counsel's performance at trial was deficient
and prejudiced the defense. See Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v.
State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). An ineffective assistance of counsel claim
cannot be based on a difference of opinion concerning strategy. "[T]he defendant must prove, by
a preponderance of the evidence, that there is . . . no plausible professional reason for a specific act
or omission." Bone, 77 S.W.3d at 836. Various factors should be considered in determining whether
counsel was effective, including pretrial motions, voir dire examination, cross-examination,
production of defense witnesses, objections, final argument, posttrial procedure, and the degree of
counsel's knowledge of the facts surrounding the case. Moya v. State, 661 S.W.2d 325, 328 (Tex.
App.—Corpus Christi 1983, no pet.).
            To satisfy the deficiency prong of the test, Goodwin must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms.
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this presumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). 
            1.         Failure to Object to Photographs
            First, Goodwin argues that his trial counsel's performance was deficient in failing to object
to the introduction of the photographs of the victim and the crime scene. A succinct summary of
Goodwin's complaints is that the photographs are overly gruesome, larger than life size, cumulative
of other testimony and other photographs, and irrelevant. A failure to object to inadmissible
evidence is an act of omission that may give rise to ineffective assistance of counsel. Alvarado v.
State, 775 S.W.2d 851 (Tex. App.—San Antonio 1989, pet. ref'd). 
            All relevant evidence is admissible at trial unless otherwise barred by constitution, statute,
or rule. Tex. R. Evid. 401. Relevant evidence is that which tends to make a fact at issue more or
less probable. Id. A trial court should exclude evidence if "its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403;
Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995).
            The trial court is required to perform the Rule 403 balancing test when the offering party
makes the appropriate objection. Santellan v. State, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997).
Trial judges are required to exclude evidence when its probative value is substantially outweighed
by the danger of unfair prejudice. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 392
(Tex. Crim. App. 1990) (op. on reh'g). In making this determination, the trial judge should "consider
the inherent tendency that some evidence may have to encourage resolution of material issues on an
inappropriate basis and should balance carefully against it the host of factors affecting probativeness,
including relative weight of the evidence and the degree to which its proponent might be
disadvantaged without it." Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992). A trial
court's decision in balancing these factors is reviewed under the abuse of discretion standard and is
disturbed on appeal only when the trial court's decision falls outside the zone of reasonable
disagreement. Mozon v. State, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999); Montgomery, 810
S.W.2d at 391–92 (op. on reh'g); Manning v. State, 126 S.W.3d 552, 555 (Tex. App.—Texarkana
2003, no pet.). 
            Generally, autopsy photographs are admissible unless they depict mutilations of the victim
due to the autopsy itself. See Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998).
Photographs showing a victim's wounds may be admitted to clarify and support observations about
the victim's injuries and to reveal the manner of death. See Moss v. State, 860 S.W.2d 194, 196 (Tex.
App.—Texarkana 1993, no pet.). While many of these photographs are cumulative of the testimony
by the State's witnesses, the general rule is that a trial court does not abuse its discretion where
pictorial evidence will aid the jury in understanding verbal testimony. Harris v. State, 661 S.W.2d
106, 107 (Tex. Crim. App. 1983); see Williams v. State, 937 S.W.2d 479, 488 (Tex. Crim. App.
1996). Even when two or more pictures depict the same scene but from different perspectives, the
trial court does not necessarily abuse its discretion in admitting the photographs because "the jury
can gain information it might not otherwise have when viewing other pictures from other
perspectives." Bacey v. State, 990 S.W.2d 319, 326 (Tex. App.—Texarkana 1999, no pet.);
Troncoso v. State, No. 06-03-00065-CR, 2004 Tex. App. LEXIS 2578 (Tex. App.—Texarkana Mar.
24, 2004, no pet.) (not designated for publication). A trial court is given wide discretion when
deciding admissibility of photographs. Sonnier, 913 S.W.2d at 519. Rule 403 carries with it a
presumption that the evidence will be more probative than prejudicial. Tennison v. State, 969
S.W.2d 578, 580 (Tex. App.—Texarkana 1998, no pet.). We find the photographs were admissible;
therefore, trial counsel was not ineffective in failing to object to them.
            2.         Failure to Request Defensive Instructions
            Goodwin alleges that his attorney's performance at trial was deficient because counsel failed
to request instructions on lesser-included offenses, necessity, self-defense, and sudden passion
arising from adequate cause. At oral argument, Goodwin alleged that the failure to request an
instruction concerning self-defense requires a reversal. In support of this argument, Goodwin cited
Vasquez v. State, 830 S.W.2d 948 (Tex. Crim. App. 1992). In Vasquez, the Texas Court of Criminal
Appeals found that the failure to request an instruction on necessity constituted ineffective assistance
of counsel. Id at 951.
            Vasquez is distinguishable from the current situation. In Vasquez, necessity was the only
defense available to the defendant. Id. at 951; see Young v. State, 991 S.W.2d 835, 839 (Tex. Crim.
App. 1999). In addition, Vaquez's trial attorney failed to conduct any independent investigation,
adequately research the law, and failed to re-urge evidence of his alleged kidnapping after the State
had "opened the door." Vasquez, 830 S.W.2d at 951 n.4. 
            This record does not contain evidence of the reasons for trial counsel's conduct. Ineffective
assistance of counsel claims "must be firmly founded in the record." Thompson v. State, 9 S.W.3d
808, 813–14 (Tex. Crim. App. 1999). "If counsel's reasons for his conduct do not appear in the
record and there is at least the possibility that the conduct could have been legitimate trial strategy,
we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct
appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); see Jackson, 877 S.W.2d at
771.
            Strategical considerations provide a reasonable explanation for the decision not to request
instructions on necessity, self-defense, and lesser-included offenses. The defense argued at trial that
the shooting was accidental and that Goodwin did not have the requisite intent to commit murder. 
The decision to pursue this theory rather than self-defense, necessity, or include the lesser-included
offenses concerned a matter of strategy. It is a valid strategic decision to focus on a single
exculpatory theory rather than to present the jury with every possible theory of the crime. If the
reasons for counsel's conduct do not appear in the record and there is at least the possibility that the
conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief
on an ineffective assistance claim on direct appeal. Murphy v. State, 112 S.W.3d 592, 601 (Tex.
Crim. App. 2003); Ortiz, 93 S.W.3d 88–89. Because Goodwin's trial counsel's reasoning for not
pursuing the self-defense theory are not contained in the record and the decisions could have been
strategic, we will defer to counsel's decisions concerning whether to request additional instructions. 
Goodwin had claimed in his original statement that the shooting was unintentional, allowing the
defense to pursue the defense of accident. The decision not to switch theories or to add alternative
theories was a strategic decision, which requires deference to the trial counsel's decision. This Court
should not consider the wisdom of such a strategy, since ineffective assistance of counsel claims
cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 835. "[T]he defendant must
prove, by a preponderance of the evidence, that there is . . . no plausible professional reason for a
specific act or omission." Id. at 836. Since there are plausible professional reasons for such conduct,
Goodwin has failed to show that trial counsel's performance was deficient. 
            While trial strategy explains the failure to request issues of self-defense, necessity, and
lesser-included offenses at the guilt stage, a further reason must be presented concerning issues
arising during the punishment phase. At the punishment stage of a trial for murder, "the defendant
may raise the issue as to whether he caused the death under the immediate influence of sudden
passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a
preponderance of the evidence, the offense is a felony of the second degree."


 "Sudden passion" is
defined as "passion directly caused by and arising out of provocation by the individual killed or
another acting with the person killed which passion arises at the time of the offense and is not solely
the result of former provocation." Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon 2003). "Adequate
cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in
a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Pen.
Code Ann. § 19.02(a)(1) (Vernon 2003). If a defendant presents evidence raising the issue of
sudden passion, he or she is entitled to an instruction on this mitigating circumstance, even if the
evidence raising such an issue is contradicted, weak, impeached, or unbelievable. Trevino v. State,
100 S.W.3d 232, 238 (Tex. Crim. App. 2003). 
            The question is whether there was any evidence from which a rational jury could infer such
passion. Moore v. State, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998). Anything more than a scintilla
of evidence is sufficient to entitle a defendant to a sudden passion instruction at punishment. See
Jones v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). Finally, we note there is no
requirement that evidence admitted at the guilt/innocence phase of trial be reoffered to be considered
at punishment. Trevino, 100 S.W.3d at 238. Evidence on a punishment issue will often come out
in the course of the State's own evidence regarding the circumstances of the offense itself, at the
guilt/innocence phase of trial. Id.
            Goodwin did not present any evidence which would raise the issue of sudden passion. 
Evidence of fear alone, or self-defense, is not sufficient evidence to raise sudden passion. The record
must show some evidence of all the elements of Tex. Pen. Code Ann. § 19.02(d) (Vernon 2003). 
An actor who fears for his or her life may coolly and deliberately dispatch his or her assailant without
panic or hysteria. See Fry v. State, 915 S.W.2d 554, 559 (Tex. App.—Houston [14th Dist.] 1995,
no pet.). Evidence of fear is not enough unless the cause of the accused's fear could produce fear that
rises to a level of terror which makes a person of ordinary temper incapable of cool reflection. 
Merchant v. State, 810 S.W.2d 305, 310 (Tex. App.—Dallas 1991, pet. ref'd) (citing Daniels v. State,
645 S.W.2d 459, 460 (Tex. Crim. App. 1983)). Testimony that the defendant became enraged,
resentful, or terrified immediately before the shooting adequately indicates such a state of mind. 
Havard v. State, 800 S.W.2d 195, 217 (Tex. Crim. App. 1989) (op. on reh'g) (holding appellant's
testimony he was "emotionally hurt and mad at the time he raised his rifle" and feared for his life
when he "saw two men with weapons drawn coming toward him" was sufficient to require sudden
passion instruction). Since there is no evidence raising the issue of sudden passion, we cannot
conclude that trial counsel's performance was deficient for failing to request such an instruction.
            3.         Failure to Offer Proof of Lifestyle and Violence
            Goodwin also argues that the failure to make an offer of proof concerning the extraneous
evidence of Ford's lifestyle and past violent acts rendered his attorney's performance ineffective. We
disagree. 
            Goodwin's argument fails because the record does not indicate what such testimony would
have been. Ineffective assistance of counsel claims "must be firmly founded in the record." 
Thompson, 9 S.W.3d at 813–14. There was no motion for new trial or other hearing which could
have introduced evidence of such testimony. Since the record does not indicate what the testimony
would have been, we do not know what evidence could have been presented raising this issue. 
Without knowing what evidence was sought, we cannot determine whether it would have been
admissible. Not all acts of violence would be admissible—only the acts which would demonstrate
that Ford was the aggressor or that would illustrate Goodwin's reasonable apprehension would have
been admissible. Direct appeal is a poor vehicle to bring an ineffective assistance of counsel claim. 
Direct appeals often present a limited record for review of the typical issues raised in an ineffective
assistance point.


 One way to get evidence of counsel's trial strategy or other matters in the direct
appeal record is through a motion for new trial. Another way to develop a proper record is through
a hearing in a habeas corpus collateral attack. See generally Tex. Code Crim. Proc. Ann. art.
11.01–.65 (Vernon 1977 & Supp. 2004). 
            Further, ineffective assistance of counsel claims must be based on the totality of the
circumstances. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Although a
defendant is entitled to effective assistance of counsel, the accused is not entitled to errorless or
perfect counsel. Id. When considered in the totality of the circumstances, Goodwin has not shown
that his trial counsel's performance was deficient. Because Goodwin has failed to show that his
counsel's performance at trial was deficient, there is no need to examine the second prong of
Strickland.
            E.        Legally Sufficient Evidence Supports the Verdict
            In his fifth point of error, Goodwin alleges that the evidence was legally insufficient to
support the jury's verdict. Specifically, Goodwin argues the State failed to prove that he intentionally
or knowingly caused serious bodily injury and committed an act clearly dangerous to human life that
caused Ford's death. We conclude there is sufficient evidence to support the jury's verdict.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            Goodwin argues that the evidence is insufficient to prove that he intentionally shot Ford. The
State proved the requisite intent through circumstantial evidence. Proof of a culpable mental state
generally relies on circumstantial evidence. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim.
App. 1991). Intent and knowledge can be inferred by the conduct of, the remarks of, and the
circumstances surrounding the acts engaged in by the accused. Ybarra v. State, 890 S.W.2d 98, 109
(Tex. App.—San Antonio 1994, pet. ref'd); Parramore v. State, 853 S.W.2d 741, 745 (Tex.
App.—Corpus Christi 1993, pet. ref'd). The State introduced sufficient circumstantial evidence that
Goodwin acted intentionally or knowingly when he pulled the trigger. The shotgun was a 20 gauge
pump action shotgun with no defects that would cause it to fire without the trigger being pulled. The
shotgun had a four and one-half pound trigger pull, which is not a "hair trigger," but not extremely
heavy. Lastly, Carol Ann Goodwin testified that, after Ford had been shot, Goodwin would not let
her go outside to help Ford because the "S-O-B needed to die." 
            When viewed in a light most favorable to the prosecution, sufficient evidence exists that a
rational juror could have concluded that Goodwin was guilty beyond a reasonable doubt. Ford died
from a single shotgun wound to the chest. Goodwin admitted to shooting Ford. The forensic
evidence was inconsistent with Goodwin's story. Bill Eubanks, an investigator with the Bowie
County District Attorney's Office, testified that, based on the blood spatter, Goodwin had been sitting
on the chair on the porch close to the wall of the house. Based on the combination of the height of
the victim, the height of the porch, the trajectory of the shot as horizontal, and the blood spatter,
Investigator Eubanks concluded that Ford had been standing on the concrete step in front of the
porch. The front porch was seven feet nine inches from the front door to the edge of the porch. No
soot or stippling were discovered on Ford's hands, although traces of antimony, barium, and lead,
which are found in gunshot residue, were detected on his hands. Stippling is an abrasion on the skin
caused by hot gunpowder. Soot or stippling should have been found on Ford's hands if they were
within a foot of the barrel. The spreading of the shotgun pellets indicated that Ford's left hand was
greater than one foot, but less than six feet away from the shotgun. The gunshot residue and lack
of soot and stippling indicated that the hand was three to four feet from the shotgun. Because
gunshot residue was also found on Ford's right palm, the right hand was up as well. Because a
rational juror could have found Goodwin guilty beyond a reasonable doubt, legally sufficient
evidence exits.
            F.        Factually Sufficient Evidence Supports the Verdict
            Goodwin's sixth point of error contends the evidence was factually insufficient to support the
jury's verdict. Specifically, Goodwin argues that the State failed to prove that he intentionally or
knowingly caused serious bodily injury and committed an act clearly dangerous to human life that
caused the death of Ford. There is sufficient evidence to support the jury's verdict.
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
slip op. at 8, 2004 Tex. Crim. App. LEXIS 668, *20 (Tex. Crim. App. Apr. 21, 2004). There are
two ways in which we may find the evidence to be factually insufficient. First, if the evidence
supporting the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a
reasonable doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the
evidence supporting and contravening the conviction—we conclude that the contrary evidence is
strong enough that the State could not have met its burden of proof, we must find the evidence
insufficient. Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof
and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence
is factually insufficient, then we must reverse the judgment and remand for a new trial. Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Goodwin's factual insufficiency argument focuses on whether the evidence showed he
possessed the required culpable mental state to commit the murder as alleged in the indictment. 
Goodwin was charged with murder by (a) intending to cause Ford serious bodily injury, and (b) by
pointing a gun at Ford, an act that is clearly dangerous to human life, and that act resulted in Ford's
death. See Tex. Pen. Code Ann. § 19.02 (a)(2). Goodwin contends that merely pointing a loaded
shotgun at the victim is not, in and of itself, an act clearly dangerous to human life, and that the
evidence does not show he intended to cause Ford serious bodily injury. 
            Goodwin argues that several pieces of evidence support his theory that the evidence is
factually insufficient. First, Goodwin told police that he had wanted Ford to leave the house because
Ford had apparently coerced Goodwin's daughter and nieces into smoking marihuana for the first
time. Second, Goodwin told police that he had only displayed the weapon so as to intimidate Ford,
but that Goodwin never intended to shoot Ford. Third, there was evidence that Ford had previously
attacked Goodwin, who suffered from multiple sclerosis and was thereby unable to adequately
defend himself. And, finally, the autopsy results confirmed Ford had used methamphetamine and
marihuana before his death, a fact which tends to support Goodwin's theory that he wanted Ford to
leave because of the drug use.
            We have stated the facts of this incident in detail in the previous discussion of the legal
sufficiency of the evidence. Among other things, this evidence shows that the firearm did not have
a hair trigger; the blood spatter evidence indicating that the gun was from one to six feet from Ford
when it discharged, refutes the contention that the gun was fired during a hand-to-hand struggle; and
Goodwin showed no remorse.
            When viewed in a neutral light, the evidence is factually sufficient. The credibility of the
witnesses is within the province of the jury. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). The jury was entitled to believe the State's version of the events. The evidence supporting
the verdict, considered alone, is not too weak to support the jury's finding of guilt beyond a
reasonable doubt. After weighing the evidence supporting and contravening the conviction, we
conclude that the contrary evidence is not strong enough that the State could not have met its burden
of proof. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 1, 2004
Date Decided:             July 23, 2004

Do Not Publish