Aurelio FLORES and Robert Flores, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 04–94–00143–CR, 04–94–00144–CR.

Court of Appeals of Texas, San Antonio.

Feb. 14, 1996.

Mark Stevens and C. Nick Rothe, San Antonio, for appellants.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LÓPEZ, GREEN and DUNCAN, JJ.

## OPINION

GREEN, Justice.

Aurelio Flores and his brother, Robert Flores, appellants, were convicted by a jury of capital murder in the stabbing death of a convenience store operator. Both appellants were sentenced to life in prison. On appeal from the convictions, each brings eleven points of error. The two cases, having been tried together, are consolidated for this appeal. We affirm.

## I. FACTUAL BACKGROUND

The victim of the murder was the owner and operator of the Highland Oaks Drive–In in San Antonio, Texas. On the night of April 12, 1992, the decedent was observed arguing with appellants outside of his store. Later that evening, Robert Flores was seen standing over the prone victim, striking him re-

peatedly in the head. At the same time, Aurelio Flores was seen emerging from the store carrying a cash register. The cash register was placed in the trunk of a car; appellants then got into the car and left the scene. The decedent died as a result of twenty-two stab wounds received in the attack.

Sheriff's officers arriving on the scene were given the identity of the assailants by witnesses to the attack. Shortly thereafter, officers found appellants and Richard Ruiz walking down a dirt road in the area. The three men were arrested.

Ruiz testified that on the night of April 12, 1992 he was at a friend's house when appellants drove up. Appellants got out of the car and began counting money on the hood of the car, splitting it up between themselves. Aurelio told Ruiz that they had a stereo and TV they wanted to get rid of, and Ruiz' friend agreed to buy the items for $35. Aurelio also told Ruiz he had left a cash register at Ruiz' house. Ruiz and appellants then drove to appellants' home, close to the Highland Oaks Drive–In, to get the TV and stereo. When they got to appellants' home, Aurelio told Ruiz that the TV and stereo were over by the street. As the three of them walked on a dirt road toward the street, cars approached. Ruiz saw Robert give something to Aurelio, who placed the item under a rock just as the Sheriff's officers arrived. The officers told them that a homicide had been committed, and placed them under arrest. Ruiz testified that appellants had not discussed anything with him about what appellants had done earlier that evening. The TV and stereo were found two days later in a vacant lot near the store. They were identified as belonging to the victim.

## II. ACCOMPLICE TESTIMONY

Much of the evidence relied on by the State to convict appellants was the testimony of Richard Ruiz. But the trial court refused to instruct the jury that Ruiz was an accomplice as a matter of law, and refused to submit to the jury the fact question of whether Ruiz was an accomplice. Appellants claim this was error.

A conviction cannot be had upon the uncorroborated testimony of an accomplice. Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1989); *Harris v. State,* 738 S.W.2d 207, 215 (Tex.Crim.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). "[A]n accomplice witness is someone who participated with another before, during or after the commission of a crime. [citations omitted] One is not an accomplice witness, however, who cannot be prosecuted for the offense with which the accused is charged." *Harris,* 738 S.W.2d at 215. If Ruiz was an accomplice of appellants in the commission of the crime charged, his testimony is insufficient to convict appellants without corroboration. *Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App.1992).

Appellants contend the evidence introduced at trial shows Ruiz was an accomplice as a matter of law, or at least creates a fact issue as to Ruiz' status as an accomplice. Appellants argue that the court was therefore required to instruct the jury on Ruiz' accomplice status.

When it is clear from the evidence that the witness was *not* an accomplice, no charge need be given to the jury either that a witness is an accomplice as a matter of law or that the jury is to decide whether the witness is an accomplice. [citations omitted] However, if there is a *conflict in the evidence* the court should charge the jury on the question of whether the witness was an accomplice *as a matter of fact.*

*Harris v. State* 645 S.W.2d 447, 456 (Tex. Crim.App.1983) (emphasis in original).

The evidence fails, however, to implicate Ruiz as guilty of capital murder, the offense charged against appellants. At best, the evidence raises issues as to Ruiz' possible culpability in other crimes.

Only the appellants were observed attacking the decedent and taking his property; there is no evidence that Ruiz was present at the scene of the crime at the time it was being committed, or that he was ever aware that appellants intended to kill the decedent. In short, there is no evidence that Ruiz affirmatively participated or assisted in the com-

mission of the crime charged against appellants. "If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice as a matter of law." *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex.Crim.App.1986), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989); *Harris*, 738 S.W.2d at 215 ("If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses.").

We find no error in the trial court refusing to instruct on the jury on the law of accomplices or to submit Ruiz' accomplice status to the jury. The points are overruled.

## III. REFUSAL TO ALLOW BILLS OF EXCEPTION

*A. The Photo Identification.* Appellants next complain that the trial court refused to allow them to make a bill of exception in question and answer form relating to a pretrial photographic array line-up identification.

■ In a hearing outside the presence of the jury, appellants questioned Sheriff's Deputy Sal Marin concerning procedures he used in showing photos of appellants to Ramon Rodriguez, one of the State's identification witnesses. During the hearing, appellants sought to elicit testimony from Deputy Marin that Rodriguez had twice changed his identification concerning which of appellants did the actual stabbing of the decedent. The trial court sustained the State's objection that the questioning was beyond the scope of the hearing on the procedures used in the photo identification.

Although the trial court denied counsel's request to make a bill of exception at that time, counsel nonetheless proceeded to make an offer of proof in the record in the form of a summary statement of what the testimony would have been. At the conclusion of the hearing, appellants' counsel stated:

Your Honor, the only thing I would have left is my Bill of Exception. If the Court will—is not going to allow me to make

that, then—*I would either want to make a Bill of Exception or the Court can accept my offer of proof.* But I do want it in the record.

Appellants now complain that they were denied their right to make a bill of exception in question and answer form.

■ When evidence is excluded, "[t]he right to make an offer of proof or perfect a bill of exception is absolute." *Spence v. State*, 758 S.W.2d 597, 599 (Tex.Crim.App. 1988), *cert. denied*, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991). To preserve the record for appeal, the party offering the excluded evidence may make an offer of proof in the form of a concise statement, or in question and answer form. Tex.R.App.P. 52(b). If the party requests it, the trial court is *required* to direct the making of the offer of proof in question and answer form. *Id.*; Tex.R.Crim.Evid. 103(b); *Kipp v. State*, 876 S.W.2d 330, 334 (Tex.Crim.App.1994).

As clearly indicated in the cited record, appellants waived any complaint that they were denied their right to make a bill of exception in question and answer form when they gave the trial court the option of "accepting" their offer of proof in summary form, and failed to insist on the question and answer format. The point is overruled.

■ *B. The Motion to Suppress.* In a hearing on appellants' motion to suppress the introduction into evidence of cash that was taken in the robbery, Sergeant Bud Baker was being questioned about the source of information leading to the discovery of the cash. Baker testified that he was told by Richard Ruiz, who had been arrested along with appellants, that the money could be found under a certain rock. Appellants' counsel then sought to elicit from Sergeant Baker what information he had that would corroborate what Ruiz had told him. The trial court sustained the State's objection that the question was outside the scope of the hearing, but refused appellants' request to make a bill of exception.

Without deciding, but assuming it was error for the trial court to deny appellants' request for a bill of exception, it was harmless for at least two reasons. First, the

record reveals that Sergeant Baker had already testified that he had no means of locating the cash other than through the directions given to him by Ruiz. A bill of exception would have added nothing to the record. Second, and more significantly, we have already held that Ruiz was not an accomplice witness; accordingly, there was no need for his testimony to be corroborated. The point is overruled.

## IV. THE VOIR DIRE

■ Prior to trial, appellants applied for probation. As a consequence, at the beginning of voir dire the trial court raised the issue of probation with the venire. The court told them that

[a] lot of people feel very strongly that they would never consider probation for an individual convicted of murder. Yet they may have somebody in front of them who is an 80–year–old man who has been an outstanding citizen all of his life and his wife is dying a horrible death and she begs him to kill her and he does, and you have the euthanasia or what has been termed a mercy killing. That, in the State of Texas, is considered murder. In that circumstance you may deal with that person a lot differently than you would deal with someone else, all right?

The prosecutors referred to the judge's example several times in their examination of the venire on the probation issue.

When it was his turn to conduct voir dire, the attorney for Aurelio Flores also asked the venire questions related to probation.

MR. STEVENS: Anybody else on this? Okay. I take it then everybody else feels like you could consider the full range of punishment including probation having found somebody guilty of intentionally or knowingly causing the death of an individual. If you can't, now is the time to say so.

Yes, sir?

THE VENIREPERSON: I think the only way that I could consider that is under the example that was given before, helping out a spouse or somebody who has a terminal disease. Anything else I couldn't.

MR. STEVENS: Okay. Fair enough. That was—that's a fair consideration because we want to know in a murder case in general, but I would want to know—is it Mr. Barsalou?

THE VENIREPERSON: Yes.

MR. STEVENS: Is that the only kind of murder case that you think you could fairly consider probation?

THE VENIREPERSON: Yes.

MR. STEVENS: Okay.

THE VENIREPERSON: That's essentially the way I feel.

MR. STEVENS: I understand. Did that get a few more responses?

The State then objected on the basis that counsel was attempting to commit the veniremen to specific facts. The court sustained the objection and refused to allow attorney Stevens to question other veniremen who displayed reservations about giving probation in murder cases.

The trial court thus refused to allow attorney Stevens to conduct what the court saw as an improper attempt to commit the veniremen to a specific set of facts. But appellants assert that range of punishment, including probation, is a proper area of inquiry. In separate points of error, appellants contend that, by refusing to allow proper and reasonable examination of the venire regarding the range of punishment, the trial court denied them their constitutionally protected right to effective assistance of counsel. TEX. CONST. art. I, § 10; *see Shipley v. State,* 790 S.W.2d 604, 607–608 (Tex.Crim.App.1990); *Mathis v. State,* 576 S.W.2d 835, 836 (Tex.Crim.App. 1979). We agree, in part.

■ A defendant is entitled to great latitude in voir dire examination, but that right is not unrestricted. *Mathis v. State,* 576 S.W.2d at 836. "A trial judge may limit a defendant's voir dire under specific circumstances: where a question commits a venireman to a specific set of facts; where the questions are duplicitous or repetitious; where the venireman has already stated his position clearly and unequivocally; and, where the questions are not in proper form." *Dinkins v. State,* 894 S.W.2d 330, 345 (Tex. Crim.App.), *cert. denied,* — U.S. ——, 116

S.Ct. 106, 133 L.Ed.2d 59 (1995) (citations omitted). A trial judge's decision to limit voir dire is reviewed on an abuse of discretion standard. *Dinkins,* 894 S.W.2d at 345. An abuse of discretion will be found only "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).

> Bias against the range of punishment is a proper area of inquiry for both challenges for cause and peremptory challenges. When the contention is that the trial court erred in denying a challenge for cause, no reversible error is shown unless the defendant exhausted his peremptory challenges and one or more objectionable juror sat on the jury. However, when the question is asked for the purpose of exercising peremptory challenges, the test for injury is entirely different. If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown.

*Mathis,* 576 S.W.2d at 836–37.

▮ Questions related to the range of punishment are proper and it was therefore an abuse of discretion for the trial court to deny appellants the right to ask them. In such cases, harm is ordinarily presumed and is not subject to a harm analysis. *Nunfio v. State,* 808 S.W.2d 482, 485 (Tex.Crim.App. 1991). But the court of criminal appeals has recently recognized that even in cases where proper voir dire questioning has been denied, a harm analysis may be appropriate. *Dinkins v. State,* 894 S.W.2d at 345 (jury selection concluded before reaching the venireman to whom questioning was improperly denied). Because of the unique circumstances of this case, we determine that a harm analysis is called for. *See* TEX.R.APP.P. 81(b)(2).

After attorney Stevens had completed his voir dire, Mr. Rothe, the attorney for Robert Flores, again raised the trial court's hypothetical and asked the venire essentially the same question attorney Stevens had previously asked and was not allowed to pursue. Only this time, when the State objected, the trial court reversed her earlier ruling and allowed attorney Rothe to fully question the venire on the subject of probation.

> MR. ROTHE: Okay, all right. What I said was that I, in hearing the answers that had been given, a good number of you answered that the only situation in which you felt that probation could be considered by you would be the hypothetical of the mercy killing situation that was set out as a hypothetical. How many people feel that that's the only circumstance when they would consider probation?
>
> I think everybody that's got his hand or her hand up has been noted, is that right, nobody else's. Okay, thank you.

Because appellant Robert Flores was clearly not denied his right to ask proper voir dire questions, his point is overruled.

As to appellant Aurelio Flores, the subject matter of his complaint was fully explored with the venire in the examination conducted by Robert's attorney, as demonstrated above. Thus, the limitation of his own voir dire "did not affect his ability to intelligently exercise his peremptory challenges and challenges for cause." *Dinkins,* 894 S.W.2d at 345. Moreover, once the trial court reversed herself on the issue, Aurelio did not avail himself of the opportunity to renew his previously denied questions to the venire, most likely because the subject had already been fully covered by attorney Rothe's voir dire examination. Under this record, we find beyond a reasonable doubt that the trial court's error as to Aurelio Flores made no contribution to his conviction, and the point is overruled. TEX. R.APP.P. 81(b)(2).

## V. *BATSON v. KENTUCKY*

Appellants raise three points of error addressing the trial court's ruling on their objection to the State's use of its peremptory challenges. In their seventh point of error, appellants complain that the trial court erred when she found appellants had not made a *prima facie* showing that the State exercised peremptory strikes in a racially discriminatory fashion in violation of the Fourteenth Amendment of the United States Constitution. In their eighth and ninth points, appel-

lants argue that the same error resulted in violations of the Equal Rights Amendment of Article 1, § 3a of the Texas Constitution and Article 35.261 of the Texas Code of Criminal Procedure.

At trial, appellants objected to the State's use of its peremptory strikes against five Hispanic veniremen. It was contended that the statistical fact that the State had used five of its ten peremptory strikes against Hispanics made out a *prima facie* case of race discrimination in juror selection.[1] The trial court found that appellants had not made out a *prima facie* case and the State was not required to present its reasons for its strikes against Hispanics. Appellants objected to the trial court's ruling and the jury was sworn.

■ *A. The* Batson *Test.* The authority for appellants' challenges is found in the U.S. Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the Supreme Court explained that the U.S. Constitution "prohibits all forms of purposeful racial discrimination in the selection of jurors." *Id.* at 88, 106 S.Ct. at 1718, 90 L.Ed.2d at 82. Under *Batson,* a prosecutor cannot use a peremptory strike against a venireman solely on account of race. *Id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83.

■ In *Batson,* the Court laid out a three-step test to evaluate objections to peremptory challenges.

*Step 1:* The opponent of the challenge must make out a *prima facie* case of racial discrimination.

*Step 2:* If a *prima facie* case is made, the burden of production shifts to the proponent of the strike to come forward with a race-neutral reason for exercising the strike.

*Step 3:* If a race-neutral explanation is given, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination.

---

1. The trial objection of Aurelio's counsel misstated the statistics regarding the State's use of its peremptory strikes. The State was entitled to six strikes per defendant for a total of twelve.

*See Batson,* 476 U.S. at 94–98, 106 S.Ct. at 1721–1724, 90 L.Ed.2d at 86–89. Here, we are concerned with Step 1 of this test. Appellants complain that the trial court erred in finding that they had not made out a *prima facie* case of racial discrimination. In determining whether a *prima facie* case has been made, courts must consider all relevant circumstances which could lead to an inference of discrimination. *Keeton v. State,* 749 S.W.2d 861, 867 (Tex.Crim.App.1988).

■ In *Keeton v. State,* the Texas Court of Criminal Appeals recognized the difficulty the trial judge faces in assessing a *Batson*-challenge and provided a list of factors to consider in each step of the *Batson*-test. Relevant to the instant case are the types of evidence listed that can be used to raise the inference of discrimination.

1. Evidence that the jurors in question shared only this one characteristic—their membership in the group—and that in all other respects they were heterogeneous as the community as a whole.

2. A pattern of strikes against a particular race on the particular venire.

3. The past conduct of the State's attorney in using peremptory challenges to strike all members of that race from the jury venire.

4. The type and manner of questions directed to the challenged juror, including lack of questions, or a lack of meaningful questions.

5. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner.

6. Disparate examination of members of the venire.

7. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike members of that race from the jury.

8. The State used peremptory challenges to dismiss all or most veniremen of the particular race.

TEX.CODE CRIM.PROC.ANN. art. 35.15(b) (Vernon Supp.1995). In later testimony, Aurelio's counsel reviewed the State's exercise of its twelve strikes.

*Keeton,* 749 S.W.2d at 867 (citing *Ex parte Branch,* 526 So.2d 609 (Ala.1987).

**B. The Standard of Review.** The Court of Criminal Appeals has adopted the "clearly erroneous" standard of review for *Batson*-challenges. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989, op. on reh'g). To determine whether the factfinder's decision is "clearly erroneous," appellate courts must review the record to determine if they are "left with the 'definite and firm conviction that a mistake has been committed.'" *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992) (citing *U.S. v. Fernandez,* 887 F.2d 564, 567 (5th Cir.1989) (which quotes *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). "[I]f the findings of the trial judge are supported by the record, the findings are not clearly erroneous." *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991).

**C. Appellants'** Batson **Challenge.** The trial court's finding that appellants did not make out a *prima facie* case of racial discrimination is entitled to great deference and will not be disturbed on appeal unless clearly erroneous. Here, the trial court's ruling is not clearly erroneous.

Under *Keeton,* evidence that the veniremen in question are members of the same race might suggest racial discrimination. In the instant case, each of the veniremen in question shared the characteristic of being "Hispanic;" however, that alone does not establish a *prima facie* case of race discrimination. Likewise, a pattern of strikes against a particular race on the particular venire might indicate racial discrimination. Here, the State used five of its twelve strikes against Hispanics, but we do not find that the State's actions constituted a pattern which conclusively established race discrimination. Appellants identified fourteen of the members of the venire as Hispanic. Striking five of those fourteen does not establish a *prima facie* case of racial discrimination when another four Hispanics were struck by appellants and four more were seated on the jury.

In fact, most of the State's strikes were against non-Hispanics.

*Keeton* also instructs courts to consider the manner in which minority members of the venire are questioned in relation to other members of the venire. Here, the State first questioned the venire as a group as to their ability to impartially consider the evidence and to assess punishment in the event the defendant was found guilty. The State then questioned members of the venire individually, focusing on prior jury experience, occupation, and again the venireman's ability to act impartially. Hispanics were not questioned in a manner disparate from non-Hispanic members of the venire, nor is there any evidence to show that their answers to the State's questions were given disparate treatment.

After considering the State's questioning of the venire and its use of peremptory strikes, we are not left with the "definite and firm conviction" that the trial court erred in finding that appellants had not made a *prima facie* case of race discrimination. Because the trial court did not err, neither appellants' rights under the Fourteenth Amendment of the U.S. Constitution nor the Equal Rights Amendment of Article 1, § 3a of the Texas Constitution were violated. Likewise, Article 35.261 of the Texas Code of Criminal Procedure was not violated. Accordingly, we overrule appellant' seventh, eighth, and ninth points of error.

## VI. JURY INSTRUCTIONS

Appellants next claim the trial court committed charge error. Because appellants timely objected, reversal is required if there was error below causing *some* harm to appellants. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1984).

**A. Instruction on Guilt or Innocence.** First, appellants contend it was error for the trial court to instruct the jury that "[y]our sole duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause, and restrict your deliberations to the issue of guilt or innocence of the defendant and nothing else." Appellants claim the instruction erroneously

described the State's burden of proof: that the jury was to consider the defendants' innocence as well as their guilt. The alleged vice is that the jury's consideration of the defendants' innocence is at odds with the legal presumption of innocence.

The quoted language is almost identical to the language reviewed in *Barnes v. State*, 855 S.W.2d 173, 175 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). In *Barnes*, it was pointed out that the complained of language is a commonly used instruction taken nearly verbatim out of the State Bar of Texas Criminal Pattern Jury Charges and follows the dictate of article 37.07 of the Code of Criminal Procedure.[2] The instruction is clearly designed to focus the jury's attention on the first phase of the bifurcated criminal trial—the "guilt/innocence" phase—and to direct the jury away from consideration of other issues, *e.g.* punishment.

The burden of proof of the State was not changed by the instruction; the appellants were still presumed innocent and the State was still required to prove the guilt of the defendants. This is demonstrated by an examination of the entire charge, which repeatedly instructs the jury that they should acquit appellants of the offenses charged unless they find from the evidence that the appellants are guilty beyond a reasonable doubt. Finding no error in the court's instruction, the point is overruled.

■ *B. Instruction on Misidentification.* Appellants next complain that the trial court erred in refusing to submit appellants' requested jury instruction concerning the identification of appellants by the witness, Ramon Rodriguez. Appellants contended that Rodriguez was an unreliable witness, and timely sought an instruction from the court directing the jury to acquit appellants if the jury had any reasonable doubt as to the accuracy of the identification of the appellants as the perpetrators of the offense charged.

■ Where, as here, the charge instructs the jury on the presumption of innocence and

the requirement of proof of guilt beyond a reasonable doubt, there is no error in refusing a requested jury instruction on mistaken identity. *Wilson v. State*, 581 S.W.2d 661, 665 (Tex.Crim.App.1979) (opinion on rehearing). The charge instructed the jury, among other things, that in order to convict appellants of capital murder the jury was required to find beyond a reasonable doubt in each case that Aurelio Flores and Robert Flores "intentionally cause[d] the death" of the decedent. If the jury was not convinced beyond a reasonable doubt that the identity of either or both of the appellants was established as being guilty of this crime, they were directed in the charge to acquit the appellants of the offense. Accordingly, the requested charge as to mistaken identity was unnecessary to protect appellants' rights. The point is overruled.

Finding no reversible error, the convictions are affirmed.

---

**2.** "In all criminal cases, ... which are tried before a jury on a plea of not guilty, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant...." Tex.Code Crim.Proc Ann. art. 37.07, Sec. 2(a) (Vernon Supp.1996).