In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00395-CR
_____

JUAN JAIME GARCIA-MARTINEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 16-06-07393-CR

**MEMORANDUM OPINION**

A jury convicted Appellant Juan Jaime Garcia-Martinez of indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2019).[1] The court assessed punishment at fifteen years of confinement. In three issues, Garcia-Martinez challenges his conviction. We affirm.

---

[1] We cite the current statutes herein because amendments to the statute made after Garcia-Martinez's offense do not affect our disposition.

1

## Underlying Facts

A grand jury indictment alleged[2] that Garcia-Martinez

> . . . on or about June 21, 2016, and before the presentment of this indictment, in the County and State aforesaid, did then and there, with intent to arouse and gratify the sexual desire of the Defendant, engage in sexual contact by touching the genitals of V.M., a child younger than 17 years of age[.]

Garcia-Martinez pleaded "not guilty." Garcia-Martinez was tried and convicted by a jury in September of 2017. The record from the trial court shows that Garcia-Martinez never objected to the jury charge or to his sentence until he filed a motion for new trial. The motion for new trial was filed after Appellant had filed his notice of appeal with this Court.

## Testimony of Rachel Fischer

Rachel Fischer explained that she is a forensic nurse for Memorial Hermann Health System and that she is a board-certified Sexual Assault Nurse Examiner (SANE) for children, adolescents, and adults. Fischer testified that she conducted a forensic medical exam on V.M. on June 21, 2016, and that V.M. was seven years old at that time. According to Fischer, V.M. told her "When I was watching cartoons,

---

[2] We use initials to refer to the alleged victim and family members. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

my dad touched me where he was not supposed to. He touched me right here. . . . He touched with his finger, and he pushed it inside. He touched on top of my shorts, but it hurt when his finger went inside." Fischer also testified that V.M. said her dad's name was Eric. Fischer testified that V.M. pointed to her female genitalia during this report. V.M. did not indicate to Fischer that any other person had done this other than Garcia-Martinez. Fischer testified that her examination of V.M.'s inner genital region identified redness, point tenderness, and pain. According to Fischer, the genital redness and point tenderness she observed was consistent with V.M.'s report of how Garcia-Martinez touched her.

Testimony of C.G.

C.G. testified that she was seventeen years old and that V.M. is her younger half-sister and K.M. is her younger half-brother. C.G. explained that V.M. and K.M.'s father was J.M., but that J.M. had left the family, and after their mother started dating Garcia-Martinez, K.M. and V.M. called Garcia-Martinez "dad" and that he goes by the name "Eric" in addition to "Juan Garcia." C.G. testified that, due to the age difference between herself and her younger siblings, she has a lot of responsibility around the home and she is "like a second mom to them." According to C.G., at the time of the incident, her mother worked two jobs at restaurants.

3

C.G. recalled that the incident occurred the day after V.M.'s birthday, that her mother had to work, and that she, V.M., K.M., and Garcia-Martinez were at the house. At one point in the afternoon, C.G. saw Garcia-Martinez touching her sister "where he wasn't supposed to," and C.G. "freaked out." C.G. testified that she saw Garcia-Martinez's hand between V.M.'s legs, under V.M.'s shorts, and "[i]n her private part." C.G. testified that she pretended she did not see anything and called V.M. to help her clean. According to C.G., Garcia-Martinez pulled his hand away and pretended he was not doing anything, but C.G. stated she "clearly saw what he was doing."

C.G. explained that, although she called V.M. to help her clean, she did not really need help with cleaning and she wanted to get V.M. out of the situation. C.G. testified that she took V.M. to the bedroom and asked if Garcia-Martinez touched her where he was not supposed to, and V.M. responded that he had and V.M. said "[p]romise you won't tell mom." According to C.G., she sent their mother a text about what had happened, and her mother instructed her to leave the house with the children and wait outside because the police were on their way, and she did as instructed. C.G. testified that she thought V.M. looked scared when the police arrived, and that V.M. cried when Garcia-Martinez was arrested. C.G. explained that, after the police left, the family went to Memorial Hermann for V.M. to be

4

checked. About a week later, the family went to Children's Safe Harbor. According to C.G., following the incident, V.M.'s grades dropped.

Testimony of V.M.'s Mother

V.M.'s Mother testified that she lived in Conroe with her three children and that she previously worked as a shift manager at a restaurant. The Mother testified that at the time of V.M.'s seventh birthday, she was dating Garcia-Martinez, and she identified the defendant as Garcia-Martinez. According to V.M.'s Mother, at the time of the incident, Garcia-Martinez had not been working, she went to work at the restaurant, and Garcia-Martinez was at her home with her three children. V.M.'s Mother testified that she received a text from C.G. just before her shift was ending, and she immediately told her boss she was leaving, she called the police, and she went home. The Mother testified that she instructed C.G. to take the other children outside to play. According to the Mother, she gave a statement to the police, and after Garcia-Martinez was arrested, Mother took V.M. to Memorial Hermann as the police had told her to do.

V.M.'s Mother testified that although V.M. has talked about the incident, it was not easy for her to talk about it at first, and that V.M. would get upset and cry. Mother stated that at first, V.M.'s attitude changed and she was a little bit defiant,

5

but V.M. has gotten better. According to the Mother, V.M. never told her the incident did not occur.

Testimony of Mayra Domingue

Mayra Domingue testified that she is a forensic interviewer at Children's Safe Harbor and that she interviewed V.M. on June 30, 2016, when V.M. was seven years old. After Domingue established rapport with V.M., she began to talk about the incident, and Domingue noticed a change in V.M.'s demeanor:

> She became very -- she sighed a lot. There was less eye contact. She became very fidgety. She talked a little softer. She kind of moaned when asked questions like she was irritated.
>
> . . . .
>
> . . . a lot of heavy sighing. A lot of not wanting to talk, telling me she didn't know, and she didn't want to talk about those things.

Domingue testified that V.M. said "that her cosita was touched[,]" which was how V.M. referred to her female sexual organ. Domingue explained as follows:

> Q. When she talked to you about the abuse, did she tell you who was the person that did things to her?
>
> A. Yes, ma'am.
>
> Q. Who was that? Who did she identify?
>
> A. She said her dad Eric.

6

Domingue testified that in her subsequent interview with C.G., C.G.'s account was consistent with V.M.'s.

Testimony of V.M.

V.M. was eight years old at the time of trial. V.M. testified that she recalled that Garcia-Martinez touched her "privates[]" when she was at home and sitting on the couch, and the touching felt "[w]eird." According to V.M., her older sister C.G. was in the bedroom "doing clothes" when the touching occurred, and after C.G. saw what happened, C.G. asked V.M. to come help with the clothes. V.M. testified that C.G. instructed her not to go back to the couch but to play with her tablet until their Mother came home, and V.M. felt sad at the time. According to V.M., her Mother looked sad and mad when she got home, and three police vehicles arrived at the home. V.M. stated that she watched Garcia-Martinez go with the police, after which she went to a "big place where there's doctors" where they checked her "where [she] go[es] to the restroom." V.M. also testified that a lady talked with her about her body parts to be sure she was okay. V.M. testified that C.G. told her that C.G. "saw everything[,]" and saw Garcia-Martinez touching her.

Testimony of Detective Shannon Acosta

Shannon Acosta testified that she is a detective with the Montgomery County Sheriff's Office and she works at Children's Safe Harbor where she investigates

7

cases of child physical and sexual abuse. Acosta stated that she was assigned to V.M.'s case. According to Detective Acosta, there was an eyewitness—C.G.—in this case, and eyewitnesses to sexual abuse are rare. Acosta testified that a SANE exam was done immediately after the incident, and the exam identified certain signs of trauma, namely pain and redness, in the "[i]nside and lower" part of the genitalia.

Testimony of Garcia-Martinez

Garcia-Martinez testified that on the day of the incident, he was not working and he stayed at home with the children. He further testified that V.M. sat on the couch next to him while they were watching TV. Garcia-Martinez did not recall his hand on V.M.'s leg, and he thought perhaps he had fallen asleep, and there is no reason his hand would have touched V.M. while he was sleeping because "[a] sleeping body, it doesn't move." At another point, Garcia-Martinez explained as follows:

> Q. So you said yesterday that maybe when you fell asleep that's when your hand went in between [V.M.'s] legs?
>
> A. I was sleeping. I fell asleep. I mean, I don't know. I didn't notice if my hand did something like that. I don't know what they saw. But it was not my intention. I don't know if I touched her or not, but it was not my intention when I fell asleep.
>
> Q. And so you don't remember touching [V.M.]?
>
> A. No.

8

Garcia-Martinez testified that things may have been misinterpreted or imagined because he was not able to hurt a girl. Garcia-Martinez also agreed that he thought C.G. and V.M. were lying about him touching V.M. According to Garcia-Martinez, C.G. might have had a grudge against him because he told her and her boyfriend to stop hugging in public so much while the family was out for dinner one night, and that after the incident in the restaurant, C.G. was moody and did not talk to him the same way.

The jury found Garcia-Martinez guilty, and the court assessed punishment at fifteen years of confinement. Following entry of judgment, Garcia-Martinez's attorney filed a motion to withdraw, which the trial court granted, and a new attorney was appointed. Garcia-Martinez's new attorney filed a notice of appeal and subsequently filed a motion for new trial, which the trial court denied.

Excessive Punishment

In his first issue, Appellant argues that his sentence of fifteen years is cruel and unusual under the Texas and United States Constitution because the sentence imposed exceeds the gravity of the offense, Appellant's sentence "far exceeds sentences for similar offenses in the same jurisdiction[,]" and there was no evidence that Appellant had any prior criminal history. In his brief, Appellant cites two Texas cases in which the defendant was convicted of aggravated sexual assault of a child

and received shorter sentences than Appellant did in the case at bar;[3] however, he did not cite any authority or cases in his motion for new trial.

In reviewing a trial court's sentencing determination, we afford the trial court "a great deal of discretion[.]" *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Generally, a sentence that is within the range of punishment established by the legislature is not unconstitutionally cruel or unusual and will not be disturbed on appeal. *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006.

Appellant was convicted of indecency with a child, a second-degree felony, and the statutory punishment range authorized by the Texas Legislature for such offense is imprisonment of "not more than 20 years or less than 2 years[]" and "a fine not to exceed $10,000." *See* Tex. Penal Code Ann. §§ 12.33 (West 2019), 21.11(a)(1), (d). Because Appellant's sentence fell within the statutory range, there is no reason to compare his sentence to sentences imposed on others. *See Simpson*,

---

[3] Appellant's brief cited *Alvarez v. State*, Nos. 13-11-00773-CR & 13-11-00774-CR, 2012 Tex. App. LEXIS 7005 (Tex. App.—Corpus Christi Aug. 21, 2012, pet. ref'd) (mem. op., not designated for publication), in which the defendant received a sentence of ten years' imprisonment for each of two counts of aggravated sexual assault of a child and five counts of aggravated sexual assault of a child, and *Perinon v. State*, 54 S.W.3d 848 (Tex. App.—Corpus Christi 2001, no pet.), in which the defendant received a sentence of ten years' imprisonment for aggravated sexual assault of a child.

488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992)). We nonetheless note numerous other instances in which defendants have received longer sentences within the statutory range for the offense of indecency with a child. *See generally, e.g.*, *James v. State*, No. 01-13-00770-CR, 2014 Tex. App. LEXIS 6525 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. ref'd) (mem. op., not designated for publication) (defendant sentenced to twenty years' confinement); *Romero v. State*, No. 09-09-00294-CR, 2010 Tex. App. LEXIS 5735 (Tex. App.—Beaumont July 21, 2010, pet. ref'd) (mem. op., not designated for publication) (defendant sentenced to twenty years' confinement and fined $10,000); *Robertson v. State*, No. 05-96-02038-CR, 1998 Tex. App. LEXIS 3826 (Tex. App.—Dallas June 26, 1998, no pet.) (mem. op., not designated for publication) (defendant sentenced to twenty years' confinement).

On this record, we cannot say that Appellant's sentence is grossly disproportionate to his offense. *See Simpson*, 488 S.W.3d at 322-23. Even if the sentence could be considered harsh, Appellant did not present evidence that it was unconstitutional. *See Randall v. State*, 529 S.W.3d 566, 569 (Tex. App.—Houston [14th Dist.] 2017, no pet.).[4] Accordingly, we overrule Appellant's first issue.

---

[4] To the degree that there was additional evidence that could have persuaded the trial court to assess a lesser sentence, it was incumbent upon Appellant to present

Jury Charge

We address Appellant's second and third issues together as both pertain to the jury charge. Appellant's second issue argues that the jury charge was improper for instructing the jury "Your sole duty at this time is to determine the guilt or innocence of the Defendant under the indictment . . . ." We understand Appellant to argue that this portion of the jury charge tasked the jury with determining "guilt or innocence," as stated in section 2 of article 37.07 instead of determining whether the defendant was "guilty or not guilty," as provided for in section 1 of article 37.07. *See* Tex. Code Crim. Proc. art. 37.07 (West Supp. 2018) Appellant's third issue argues that section 2(a) of article 37.07 is unconstitutional as applied to him because using the word "innocence" violated due process by shifting the burden to the defendant and instructing the jury to consider the defendant's actual innocence rather to presume innocence.

Appellant did not raise these objections prior to the submission to the jury or prior to the jury's verdict, although he raised them in a post-trial motion for new trial filed after his notice of appeal had been filed. Generally, the failure to timely object

---

that evidence during the punishment hearing. *See State v. Simpson*, 488 S.W.3d 318, 324 (Tex. Crim. App. 2016).

12

to an alleged error in a jury charge constitutes a waiver of that error. Tex. R. Civ. P. 272.

Where an appellant raises jury charge error on appeal, the degree of harm necessary for reversal depends on whether the appellant preserved the error by a timely objection at trial. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). When, as here, the defendant fails to object or states in the trial court that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *See State v. Ambrose*, 487 S.W.3d 587, 595 (Tex. Crim. App. 2016) ("[U]npreserved jury-charge error does not require a new trial, even when the error is complained of in a motion for new trial, unless the error causes 'egregious harm.'"); *Ngo v. State*, 175 S.W.3d 738, 743-4 (Tex. Crim. App. 2005) (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo*, 175 S.W.3d at 750 (quoting *Hutch*, 922 S.W.2d at 171). An appellant must have suffered actual harm, not merely theoretical harm. *See Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (citing *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986)). We review jury charge error by a two-step process. *Ngo*, 175 S.W.3d

13

at 744. First, we determine whether error exists in the jury charge. *Id.* Second, we determine whether sufficient harm was caused by the error to require reversal. *Id.*

Several of our sister courts have concluded that a jury instruction like the one in this case is not erroneous. *See Avila v. State*, 15 S.W.3d 568, 576-77 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Flores v. State*, 920 S.W.2d 347, 357 (Tex. App.—San Antonio 1996), *pet. dism'd, improvidently granted*, 940 S.W.2d 660 (Tex. Crim. App. 1996) (per curiam); *Barnes v. State*, 855 S.W.2d 173, 175 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).[5] The instruction is clearly designed to focus the jury's attention on the first phase of the bifurcated criminal trial—the "guilt-or-innocence" phase—and to direct the jury away from consideration of other issues, including punishment. *See Barnes*, 855 S.W.2d at 175. The State's burden of proof was not changed by the instruction; the Appellant was still presumed innocent, and the State was still required to prove the guilt of the defendant. *See Flores*, 920 S.W.2d at 357. The jury charge expressly instructed the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts

_____

[5] *See also Monk v. State*, No. 06-18-00051-CR, 2018 Tex. App. LEXIS 8345, at **2-7 (Tex. App.—Texarkana Oct. 12, 2018, pet. ref'd) (mem. op., not designated for publication); *Turner v. State*, No. 05-17-00015-CR, 2018 Tex. App. LEXIS 5351, at **8-11 (Tex. App.—Dallas July 16, 2018, pet. ref'd) (mem. op., not designated for publication); *Harrison v. State*, No. 01-97-01408-CR, 1999 Tex. App. LEXIS 3690, at **8-9 (Tex. App.—Houston [1st Dist.] May 13, 1999, no pet.) (not designated for publication).

to the defendant[]" and "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." We join our sister courts and conclude that the challenged jury charge was not erroneous.

Appellant acknowledges the above holdings of our sister courts. He also notes that the Texas Criminal Pattern Jury Charges have been amended "to use the preferred language of 'guilty or not guilty.'" *See* State Bar of Texas, Texas Criminal Pattern Jury Charges—General, Evidentiary & Ancillary Instructions, § 2.1 (2015).

In this case, the trial court instructed, in relevant part, as follows:

> A Grand Jury indictment is the means whereby a defendant is brought to trial in a felony prosecution. It is not evidence of guilt nor can it be considered by you in passing upon the question of guilt of the defendant. The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

> . . . .

15

> Your sole duty at this time is to determine the guilt or innocence of the Defendant under the indictment in this cause; restrict your deliberations solely to the issue of guilt or innocence of the Defendant.

The pattern jury charge would instruct as follows:

> The defendant is presumed innocent of the charge. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. Unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case, the presumption of innocence alone is sufficient to acquit the defendant.
>
> . . . .
>
> The law requires that you render a verdict of either "guilty" or "not guilty." The verdict of "not guilty" simply means that the state's evidence does not prove the defendant guilty beyond a reasonable doubt.

*Id.*

Appellant provides no authority to compel a finding that the trial court erred in using language that differed from the pattern jury charges, nor are we aware of any. *See* Tex. R. App. P. 38.1(i) (an appellate brief must support its arguments with citations to the record and to relevant authority). The purpose of pattern jury charges is "to assist the bench and bar in preparing the court's charge in jury cases[]" and the pattern instructions are "suggestions and guides" that "have no official status." State Bar of Texas, Texas Criminal Pattern Jury Charges—General, Evidentiary &

16

Ancillary Instructions, Introduction. "Appellate courts are unlikely to regard trial judges' refusal to use the Committee's jury instructions as reversible error." *Id.*

Having found no error, we need not determine whether any harm resulted. *See Ngo*, 175 S.W.3d at 743 ("[I]f we find error, we analyze that error for harm."). Nevertheless, even assuming the trial court erred by including the challenged language in the jury charge, the Appellant must establish egregious harm.

To determine whether egregious harm resulted, we examine "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. In this case, as we have explained, the jury charge properly instructed the jury of the State's burden of proof and the necessity for proof beyond a reasonable doubt for a guilty verdict. V.M. testified that Appellant touched her privates, and C.G. testified that she observed Appellant put his hand in V.M.'s shorts. The SANE testified that in her examination of V.M., she observed redness, tenderness, and pain consistent with V.M.'s report that the Appellant touched her privates: redness, point tenderness, and pain. Considering the entirety of the record, we find no egregious harm, and Appellant has not demonstrated that his trial was so fundamentally flawed that it violated due process. *See id.* We overrule Appellant's second issue.

Appellant's third issue raises an as-applied challenge to section 2(a) of article 37.07. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a). Appellant contends that the included language and the statute from which it is derived are unconstitutional because he was denied "due process" rights when the trial court included the language from section 2(a) of article 37.07 in the charge. Appellant argues that the language "negates elements of the crime that the State must prove to convict appellant of the charged offense" and it "shifts the burden" to the defendant to prove innocence or asks the jury to consider and decide actual innocence rather than whether the State has proven the defendant guilty beyond a reasonable doubt. According to Appellant, the presumption of innocence is part of the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments. Appellant did not make this argument during the trial but did make the argument in his motion for new trial.

As-applied constitutional claims are subject to the preservation requirement and must be raised in the trial court to preserve error. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) (citing *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Curry v. State*, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (stating that "[e]ven constitutional errors may be

waived by failure to object at trial")). An as-applied challenge to the constitutionality

of a statute asserts that a statute, although generally constitutional, operates

unconstitutionally as to the claimant because of his facts and circumstances. *See*

*Faust v. State*, 491 S.W.3d 733, 743-44 (Tex. Crim. App. 2015) (citing *State ex rel.*

*Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *Gillenwaters v. State*,

205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006)). When reviewing the

constitutionality of a statute, we presume that the statute is valid and that the

Legislature acted reasonably in enacting it. *Id.* (citing *Rodriguez v. State*, 93 S.W.3d

60, 69 (Tex. Crim. App. 2002)). Because of the presumption of constitutionality, the

burden rests on the challenger to establish the statute's unconstitutionality as applied

to him. *See Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016).

Resolving an as-applied challenge "'requires a recourse to evidence[,]'" and the

challenger bears the burden of producing evidence to "specifically demonstrat[e]

that the law in question is unconstitutional as 'applied to him[.]'" *See Estes v. State*,

546 S.W.3d 691, 698 (Tex. Crim. App. 2018) (quoting *Fine*, 330 S.W.3d at 910)).

We have previously explained that we do not find error in the trial court's

inclusion of the challenged language. Jury instructions that are not legally erroneous

but could be subject to an erroneous application are reviewed to determine "whether

there is a reasonable likelihood that the jury has applied the challenged instruction"

19

in an erroneous way. *See Luquis v. State*, 72 S.W.3d 355, 367 n.37 (Tex. Crim. App. 2002) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). Reviewing courts should consider the entire jury charge and trial record and use common sense in determining whether there is a reasonable likelihood that the jury was misled. *See Almanza*, 686 S.W.2d at 171; *Mireles v. State*, 901 S.W.2d 458, 460 (Tex. Crim. App. 1995); *see also Trevino v. State*, 474 S.W.3d 737, 747, 2014 Tex. App. LEXIS 11598 (Tex. App.—Beaumont 2014, pet. ref'd) (mem. op., not designated for publication). We generally presume the jury followed the trial court's instructions as given, and we will not reverse in the absence of evidence that the jury was actually misled or confused by the charge. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996); *Bui v. State*, 68 S.W.3d 830, 842 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (considering a claim that the jury charge was unconstitutional as applied to the defendant and concluding that "[e]ven if the first sentence of the charge were considered erroneous, the charge, as a whole, prevented any possible misunderstanding the jury could have had[]").

Here, Appellant failed to make this objection during the trial, and he failed to explain or produce evidence with his motion for new trial specifically demonstrating that the statute operates unconstitutionally as applied to him because of his particular facts and circumstances. *See Faust*, 491 S.W.3d at 743-44. In reviewing the entire

20

record before us, there is nothing in the record suggesting a reasonable likelihood that the jury was confused in any way by the challenged instruction nor does Appellant point to any such evidence in the record. There is no evidence that the jury did not follow the trial court's clear and explicit instructions regarding the State's burden of proof and the presumption of innocence. *See Luquis*, 72 S.W.3d at 368; *Bui*, 68 S.W.3d at 842; *Jackson v. State*, No. 02-14-00346-CR, 2015 Tex. App. LEXIS 9071, at \*\*3-5 (Tex. App.—Fort Worth Aug. 27, 2015, pet. ref'd) (mem. op., not designated for publication).

For the same reasons explained earlier, we also reject Appellant's argument that he was denied "due process" under the law by the inclusion of the complained-of instruction in the jury charge. Appellant did not meet his burden to specifically demonstrate that the law in question—article 37.07, section 2(a)—is unconstitutional as applied to him. *See Estes*, 546 S.W.3d at 698. We overrule his third issue.

Having overruled all Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

21

Submitted on March 14, 2019
Opinion Delivered May 1, 2019
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.